Argued and submitted December 4, 1979, affirmed March 18, 1980

# DOWERS FARMS, INC.,
*Petitioner,*

*v.*

# LAKE COUNTY,
*Respondent.*

## (CA 11232, SC 26249)

607 P2d 1361

John P. Conley, Portland, argued the cause for petitioner. On the brief was James H. Phelps, Madras.

G. Kenneth Shiroishi, Portland, argued the cause for respondent. On the brief was Howard K. Beebe, Portland.

Before Denecke, Chief Justice, and Holman,** Howell, Lent, Linde,*** and Peterson, Justices.

LENT, J.

---

**Holman, J. retired January 20, 1980, and did not participate in this opinion.

***Linde, J. did not participate in this opinion.

## LENT, J.

This case arises under the statutes providing for tort actions against public bodies (herein the Tort Claims Act). ORS 30.260 to 30.300. Two issues are presented. The first is whether the two year period of limitations, ORS 30.275(3), runs from the date of the incident precipitating plaintiff's injury[1] or from the date when the plaintiff discovers the injury.[2] We hold that it runs from the date of the discovery. The second issue is whether there is evidence from which it could be found that plaintiff complied with the notice requirements of ORS 30.275(1). We hold there was not and therefore affirm the Court of Appeals' reversal of the trial court judgment for plaintiff.

Prior to answering in the trial court, defendant demurred to the amended complaint on the ground that "[i]t appears from the face of the Amended Complaint that the action was not commenced within the

---

[1] The amended complaint was in two counts. The first count asserted the right to recover on the ground that the spraying of herbicides is an ultra hazardous activity. The second count asserted that defendant was negligent in allowing the herbicide spray to enter upon plaintiff's land and thereby injure the potato crop.

In the course of argument and decision in the trial court on both the demurrer to the complaint and to the amended complaint, the parties and the court treated the case as being one in nonintentional trespass. *Compare, Loe et ux v. Lenhardt et al*, 227 Or 242, 362 P2d 312 (1961). On appeal defendant referred to the alleged wrong as being trespass. All concerned at each stage of this case have treated the case as one seeking damages for injury to the potato crop and not for breaking the close as such. For fr 242, 362 P2d 312 (1961). On appeal defendant referred to the alleged wrong as being trespass. All concerned at each stage of this case have treated the case as one seeking damages for injury to the potato crop and not for breaking the close as such. For the purpose of deciding whether the demurrer was properly overruled, therefore, we treat the amended complaint as asserting a negligent trespass. Compare, *Loe et ux v. Lenhardt et al, supra*; Prosser, Torts (4th Ed), § 7, pp. 28-29.

[2] The facts alleged in the amended complaint and admitted by demurrer, *U. S. Nat'l Bank v. Davies*, 274 Or 663, 665, 548 P2d 966 (1976), do not show that plaintiff, in the exercise of resonable care, should have discovered the injury to its potato crop earlier than it actually made such discovery.

time limited by statute."[3] The demurrer was over-ruled. Upon trial, after both parties had rested defendant timely moved for a directed verdict on the ground

> "there is no competent or substantial evidence that the notice required by statute was given by plaintiff; that there is no competent or substantial evidence that the defendant, Lake County, had actual notice of the plaintiff's claim within the 180 days required by the statute."[4]

The motion was denied. Plaintiff had judgment upon a jury verdict.

On appeal defendant assigned as error the overruling of its demurrer and the denial of its motion. The Court of Appeals reversed, holding that the statute of limitations begins to run from the date of the incident precipitating the injury rather than the date upon which the resulting injury is discovered.[5] *Dowers Farms, Inc.*, 39 Or Ap 685, 593 P2d 1207, *reconsid den*

---

[3] At the time of pleading in this case ORS 16.260 provided:

"The defendant may demur to the complaint * * * when it appears upon the face thereof:

"* * * * *

"(6) That the complaint does not state facts sufficient to constitute a cause of action; or

"(7) That the action has not been commenced within the time limited by statute."

Defendant also demurred upon the basis of ORS 16.260(6) and that demurrer was overruled, but defendant does not assign that ruling as error.

ORS 16.260 has since been repealed, Or Laws 1979, ch 284, § 199. Demurrers are no longer to be used to raise such legal issues, ORCP 13 C. ORCP 21 A provides for raising such issues by motion to dismiss. In a proper case the statute of limitations may be raised as an affirmative defense, ORCP 19 B. Cf., ORS 12.010.

[4] Defendant also moved for directed verdict upon the basis that the face of the amended complaint affirmatively showed that the action was not commenced within the time limited by statute. That motion was denied but defendant, having raised the legal issue by assigning error for overruling of its demurrer on that same ground, does not assign the denial of the motion on that basis as error.

[5] Because that holding was dispositive the Court of Appeals had no occasion to consider the denial of the motion for directed verdict.

with opinion, 40 Or App 647, 595 P2d 1385 (1979). We allowed review, ORS 2.520, to consider that holding.

## THE STATUTE OF LIMITATIONS

In its amended complaint plaintiff alleges that on March 11, 1975, defendant sprayed herbicide upon a country road bordering upon plaintiff's land, that the spray drifted onto plaintiff's land and destroyed plaintiff's potato crop, and that plaintiff first discovered the injury on July 15, 1975. This action was commenced on June 14, 1977, which is more than two years from the date of defendant's spraying but less than two years from the date of plaintiff's discovery of the resulting injury.

As pertinent to the statute of limitations issue, ORS 30.275(3) provided at the time this case was filed:

"No action shall be maintained * * * unless the action is commenced within two years after the date of such accident or occurrence."

The first order of inquiry is whether the meaning intended by the legislature for the words "accident or occurrence" is "not ambiguous" as the Court of Appeals held, 39 Or App at 689, 593 P2d at 1209.[6]

We note that the definitions section, ORS 30.260, does not include the term "accident or occurrence." When the Tort Claims Act was enacted in 1967, Or Laws 1967, ch 627, the word "accident" did not appear at all. The word "occurrence" appeared twice in Section 4 (codified as ORS 30.270) which limited liability to "$300,000 for any number of claims arising out of a single occurrence" and provided for apportionment of awards and settlements among claimants "for all claims arising out of the occurrence." Section 5 (codified as ORS 30.275) did not employ either word:

---

[6] Plaintiff contends that the Court of Appeals necessarily found the term to be ambiguous by the very act of publishing an explanatory opinion, *Dowers Farms, Inc. v. Lake County,* 40 Or App 647, 595 P2d 1385 (1979). In light of our independent conclusion concerning ambiguity, we do not reach that contention.

"Section 5. (1) Every person who claims damages from a public body for or on account of any loss or injury within the scope of this Act shall cause to be presented to the governing body of the public body within 45 days after the alleged loss or injury a written notice stating the time, place and circumstances thereof, and the amount of compensation or other relief demanded. Failure to state the amount of compensation or other relief demanded does not invalidate the notice; but, in such case, the claimant shall furnish full information regarding the nature and extent of the injuries and damages within 30 days after written demand by the public body.

"(2) When the claim is for death, the notice may be presented by the personal representative, surviving spouse or next of kin, or by the consular officer of the foreign country of which the deceased was a citizen, within one year after the alleged injury or loss resulting in such death. However, if the person for whose death the claim is made has presented a notice that would have been sufficient had he lived, an action for wrongful death may be brought without any additional notice.

"(3) No action shall be maintained unless such notice has been given and unless the action is commenced within one year after such notice. The time for giving such notice does not include the time, not exceeding 90 days, during which the person injured is incapacitated by the injury from giving the notice."

It is plain that the limitation for commencing action was pegged to the giving of notice, in turn pegged to the date of "loss or injury."

At the very next general session the legislature made changes with respect to the language concerning the period of limitation, Or Laws 1969, ch 429, § 3, by amending ORS 30.275 to the form applicable to this case. The amendments to subsections (1) and (3) follow (with deleted matter in brackets and new matter in italics):[7]

---

[7] Subsection (2) continued in its original form until amended by Oregon Laws, 1979, chapter 284, section 64, in a particular not important to this case.

"(1) Every person who claims damages from a public body for or on account of any loss or injury within the scope of ORS 30.260 to 30.300 shall cause to be presented to [the governing body of] the public body within [45] *180* days after the alleged loss or injury a written notice stating the time, place and circumstances thereof, and the amount of compensation or other relief demanded. *Claims against the State of Oregon shall be presented to the state agency against whom the claim is made or to the Attorney General. Claims against any other public body shall be presented to a person upon whom process could be served in accordance with subsection (2) of ORS 15.080.* Failure to state the amount of compensation or other relief demanded does not invalidate the notice. [; but, in such case, the claimant shall furnish full information regarding the nature and extent of the injuries and damages within 30 days after written demand by the public body.]

"* * * * *

"(3) No action shall be maintained unless such notice has been given and unless the action is commenced within [one year after such notice] *two years after the date of such accident or occurrence.* The time for giving such notice does not include the time, not exceeding 90 days, during which the person injured is [incapacitated by] *unable to give the notice because of* the injury [from giving the notice] *or because of minority, incompetency or other incapacity."*

Plaintiff contends that the 1969 amendments to ORS 30.275 were intended to "liberalize" the statute with respect to the period of limitations because the original notice period was extended from 45 to 180 days and a two-year period of limitations was provided in place of the assertedly maximum period of one year and 45 days in the 1967 version. Defendant argues, however, that exactly the opposite was the legislative concern in that action could be commenced at any time up until one year from giving of notice and, since the time for giving of the notice did not commence to run until discovery of a "latent" or "undiscovered" loss or injury, there was prior to the 1969 amendments "an

unlimited time liability." Defendant further argues that the two-year period was intended to provide a "statute of ultimate repose." While each argument has merit neither really addresses the meaning of "accident or occurrence." Our own examination of the statutory scheme, however, brings us to the conclusion that the meaning of the term "accident or occurrence" is not plain on its face and therefore requires judicial construction.

The parties have not referred us to any legislative history which *squarely* points to the intent of the legislature in injecting the term "accident or occurrence" into ORS 30.275. Neither has our own research been of avail in this respect.

As noted above the word "occurrence" had been used in the 1967 Act. The 1969 amendments for the first time injected the word "accident" into the Tort Claims Act in amendments to ORS 30.270 as well as to 30.275(3) as set forth above. In each place where the word "accident" was added it was done so as a part of the term "accident or occurrence."

The 1969 amendment to ORS 30.275(3) provides the modifier "such" immediately preceding "accident or occurrence." That would indicate that the term is used in the same sense as a previous usage. As noted above there is no previous usage of the term in ORS 30.275, but there is a usage of the term in ORS 30.270 as simultaneously amended in 1969 (deleted matter in brackets and new matter in italics):

"Section 2. ORS 30.270 is amended to read:

"30.270. (1) Liability of [any] *a* public body [on any claim] *on claims* within the scope of ORS 30.260 to 30.300 shall not exceed:

"(a) [$25,000 when the claim is one for damage to or destruction of property and $50,000 to any claimant in any other case.] *$25,000 to any claimant for any number of claims for damage to or destruction of property, including consequential damages, arising out of a single accident or occurrence.*

[676]

"[(b) $300,000 for any number of claims arising out of a single occurrence.]

"*(b) $50,000 to any claimant for all other claims arising out of a single accident or occurrence.*

"(c) $300,000 for any number of claims arising out of a single accident or occurrence.

"(2) No award for damages on any such claim shall include punitive damages. The limitation imposed by this section on individual claimants includes damages claimed for loss of services or loss of support arising out of the same tort.

"(3) Where the amount awarded to or settled upon multiple claimants exceeds $300,000, any party may apply to any circuit court to apportion to each claimant his proper share of the total amount limited by subsection (1) of this section. The share apportioned each claimant shall be in the proportion that the ratio of the award or settlement made to him bears to the aggregate awards and settlements for all claims arising out of the occurrence."

The apparent concern of the amendments is to shift the pegging of the monetary limitations to a total limitation for each "accident or occurrence" rather than to the claim or claims arising out of an accident or occurrence. In enacting those amendments, however, the legislature first introduced the term "accident or occurence," which occurs four times in Or Laws 1969, ch 429. We find it most logical to conclude that the word "such" modifying the term in the fourth use, now codified in ORS 30.275(3), refers back to the first three uses of the term in the preceding section of the amendments, now codified in ORS 30.270.

Did the legislature intend any different meaning to be assigned to "accident" than to "occurrence"? The amendments to ORS 30.270 deleted the word "occurrence" in one of the two places in which it appeared in the original version but left the other, which is the last word in the section. Since the legislature did not insert "accident or" immediately prior to "occurrence" in that place but allowed "occurrence" to be used in the same sense that "accident or occurrence"

was used in the amendments to subsection (1), we hold that the two words are used as having a single referent.

The next inquiry is whether there is anything in the section (ORS 30.270) where the term is first used three times to indicate what the legislature intended by the term. We find there is. Each subsection in that code section is concerned with the monetary limit on a claim or claims arising out of some event. Subparagraphs (a), (b) and (c) of subsection (1) describe that event as being a "single accident or occurrence." Subsection (3) describes that event as being "the occurrence," which we have decided means the same as "accident or occurrence" in subsection (1). Subsection (2) describes that event as being "the same tort." The context in which each descriptive term is used makes it appear to us that the legislature has simply used various terms to describe the same event. It follows that the terms may be used interchangeably and the statute may be read as if in each subsection the term "the same tort" were used. Accordingly the term "such accident or occurrence" used in ORS 30.275(3) may be read as if it said "the tort."

As Prosser tells us in the first sentence of his handbook on the Law of Torts, "A really satisfactory definition of a tort has yet to be found." W. Prosser, Law of Torts, p. 1 (4th Ed 1971).[8] Certain characteristics common to tort actions, however, are a breach of a legal duty, and a resulting injury to the victim in his person, property, reputation or other protected interest that will support recovery in an action at law for damages. *Cf.,* W. Prosser, supra at pp. 4-5. We have concluded that the term "such accident or occurrence" used in ORS 30.275(3) may be read as if it said "the tort." It follows that there is no "accident or occurrence" unless the result is injury capable of compensation in an action for damages. It remains then to

---

[8] *Cf., Urban Renewal Agency v. Lackey,* 275 Or 35, 38, 549 P2d 657 (1976); *State ex rel McKenna v. Bennett,* 28 Or App 155, 159, 558 P2d 1281 (1977); and Restatement, Second, Torts, § 6.

determine at what point in time the "accident or occurrence" occurred under the allegations of this amended complaint for purposes of the two-year statute of limitations in ORS 30.275(3). The defendant maintains that the statute of limitations should start to run from the date of the spraying. The plaintiff maintains that the statute of limitations should start to run when the injury was discovered.

The defendant argues that this court has stated that statutes which waive governmental immunity and impose liability on public bodies should be narrowly construed. The cases which defendant cites for this proposition, however,[9] were decided before the enactment in 1967 of Oregon's Tort Claims Act, ORS 30.260 to 30.300.

The Oregon Constitution, Art IV, sec 24,[10] protects the state from "suit" unless the legislature provides a cause of action. The courts construed the immunity of the state in Art IV, sec 24, to include immunity for the political subdivisions of the state. *See, e.g., Hale v. Smith*, 254 Or 300, 308, 460 P2d 351 (1969); *Rapp v. Multnomah County*, 77 Or 607, 610, 152 P 243 (1915). Because public bodies were generally immune from "suit," specific statutes which provided a cause of action against public bodies in limited situations were narrowly construed by the courts. *See, e.g., Clary v. Polk County*, 231 Or 148, 150-153, 372 P2d 524 (1962). The courts could not judicially abolish the unpopular and often harsh doctrine of governmental tort immunity. *Cf., State v. Shinkle*, 231 Or 528, 373 P2d 674 (1962). In 1967, the Oregon legislature followed the

[9] Defendant cites *Clary v. Polk County*, 231 Or 148, 152-153, 372 P2d 524 (1962); *Schrader v. Veatch et al*, 216 Or 105, 107, 337 P2d 814 (1959); *Hillman v. North Wasco Co. PUD*, 213 Or 264, 309-310, 232 P2d 664 (1958).

[10] Or Const. Art IV, § 24:

"Provision may be made by general law, for bringing suit against the State, as to all liabilities originating after, or existing at the time of the adoption of this Constitution; but no special act authorizeing [sic] such suit to be brought, or making compensation to any person claiming damages against the State, shall ever be passed."

modern trend and passed the Tort Claims Act, thus partially abolishing tort immunity for all public bodies.

The drafters of Oregon's Tort Claims Act chose an "open-end" approach, making the government generally liable with exceptions, as opposed to a "closed-end" approach, making the government generally immune with exceptions.[11] ORS 30.265(1) provides:

> "Subject to the limitations of ORS 30.260 to 30.300, every public body is liable for its torts and those of its officers, employes and agents acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function. * * *."

We believe that the Tort Claims Act was intended to be remedial legislation, allowing all citizens to seek redress for any tort committed by their governments, except for the specific immunities listed in the statutes. *Cf.,* W Prosser, Law of Torts, § 131, pp. 984-987 (4th Ed 1971). A narrow statutory construction of the provisions of the Tort Claims Act would be contrary to its general remedial purposes.

We have in mind that before us is a cause allegedly arising from negligence of the defendant. See n. 1, *supra.* There is no legislative history to tell us that the legislature intended the courts to apply different rules with respect to fixing the point in time when the limitation period commences to run in causes of action for damages for negligence under the Tort Claims Act than in such causes outside the Act.[12] We had occasion to discuss in some detail the time from which the period of limitations should commence to run in such a cause in *U. S. Nat'l Bank v. Davies,* 274 Or 663, 666-668, 548 P2d 966 (1976) and concluded that "in a negligence case the statute of limitations should never start to run until the occurrence of the harm." 274 Or

---

[11] Lansing, *The King Can Do Wrong! The Oregon Tort Claims Act,* 47 Or L Rev 357, 359 (1968).

[12] There are, of course, many different rules not applicable to this case set forth in the Tort Claims Act.

at 668. We went on to hold that the harm occurred when the plaintiff was aware, or should have been aware, that the harm was caused by the defendant. Similarly, in *Berry v. Branner*, 245 Or 307, 421 P2d 996 (1966), we held that a cause of action for medical malpractice does not accrue until the patient becomes aware or should have become aware of the injury. *Cf., Frohs v. Greene*, 253 Or 1, 452 P2d 564 (1969).[13] In *Schiele v. Hobart Corporation*, 284 Or 483, 587 P2d 1010 (1978), this court concluded that the statute of limitations on claims involving negligent infliction of occupational disease begins to run when a reasonably prudent person associates the symptoms with serious damage and at the same time perceives the defendant's role in inducing the injury.

The logic of those cases requiring injury and a reasonable opportunity for discovery of the cause of the injury before the statute of limitations begins to run is equally applicable to the two year limitation period in ORS 30.275(3). To hold otherwise would impose an unreasonably narrow construction on the limitation period of the Tort Claims Act that would contravene both the policy of our case law on limitations periods and the legislative policy in Oregon allowing citizens to seek redress for torts committed by their governments.

We therefore hold that the statute of limitations in ORS 30.275(3) did not begin to run in this case until the plaintiff discovered that the young potato plants were deformed.

---

[13] United States Courts of Appeals have applied this approach to medical malpractice claims under the Federal Tort Claims Act, 28 USC § 2401(b), which bars any tort claim against the United States unless written notice is given "within two years after such claim accrues." *See, e.g., Quinton v. United States*, 304 F2d 234 (5th Cir 1962); *Hungerford v. United States*, 307 F2d 99 (9th Cir 1962). *Cf., United States v. Kubrick*, 444 US 111, 100 S Ct 352, 62 L Ed2d 259 (1979), in which the Supreme Court recently held that a claim "accrues" under the Federal Tort Claims Act when the plaintiff is aware of the existence and probable cause of the injury.

## THE 180 DAY NOTICE REQUIREMENT

Our holding on the statute of limitations issue revives defendant's claim of error for denial of its motion for directed verdict. This requires us to determine whether we can affirmatively say there is no evidence to support a finding that plaintiff complied with the 180 day notice requirement of ORS 30.275(1). Or Const. Art VII (Amend), § 3.

At the time applicable to this case that subsection required that a person claiming damages against a county under the Tort Claims Act "shall cause to be presented" written notice of his claim to the county within 180 days after the alleged loss or injury.[14] The claimant was required to cause notice to be presented to the person upon whom "process" could be served under then ORS 15.080(2).[15] That subsection required that "summons" was to be served in an action

"against any county, incorporated city, school district or other public corporation, commission or board in this state, to the clerk or secretary thereof. If any such commission or board does not have a clerk or secretary, to any member thereof."

There is evidence from which the jury could find the following facts most favorable to the plaintiff, and we are, therefore, bound by such facts. *Shepler v. Weyerhaeuser Company,* 279 Or 477, 484, 569 P2d 1040 (1977). On approximately July 15, 1977, Mr. Lanier, plaintiff's manager, first noticed that the potatoes planted in May, 1975, were producing de-

[14] We are not concerned in this case with the *time* for presenting the notice; our concern is with the manner of presentation.

[15] In 1975 ORS 30.275(1) was amended to require that the notice was to be caused to be presented to a person upon whom process could be served in accordance with ORS 15.080(3), Or Laws 1975, ch 604, § 1a. *See, also,* Or Laws 1975, ch 609, § 14, and for the present requirement Or Laws 1979, ch 284, § 64, providing for causing presentation of the notice to the person upon whom process can be served under ORCP 7 D.(3)(d).

The parties have raised no issue concerning the use of the word "process" in ORS 30.275 as if it included "summons," with which ORS 15.080 deals. The court has found summons to be apart from process because summons is not required to be issued by a court or officer thereof. *Bailey v. Williams,* 6 Or 71 (1876). *See, Whitney v. Blackburn,* 17 Or 564, 21 P 874 (1889). *Compare,* Comment to ORCP 8.

formed plants. Lanier reported this to a Mr. Dowers and then contacted a Mr. Humphrey,[16] who came out and inspected the field. In the first part of August Lanier went to the county seat and talked to "Paul McCormick at the Extension Office."[17] McCormick referred Lanier to a Mr. Steward,[18] who was apparently the administrative assistant to the board of county commissioners. Steward told Lanier that the county road department had affirmed that the department had conducted the spraying. Lanier did not talk to anyone else "in the County" about the matter. Steward informed Lanier that Steward would take care of the problem. Later, on or about August 18, Lanier mailed a written report[19] of the matter to "the road department" at Humphrey's recommendation. Mr. Lawson, roadmaster of the county road department was notified of the "spray claim" by Steward. Lawson notified the "Extension Agent."[20] The exten-

[16] Mr. Dowers' connection with the case is not otherwise identified in the record on appeal. A natural inference is that he had something to do with ownership or management of the plaintiff. Mr. Humphrey is not identified as to function by anything in the record on appeal.

[17] As far as the record on appeal is concerned Mr. McCormick's role and function is not identified in the record on appeal. We suppose the jury could infer he had some official function in that office.

[18] Lanier identified Steward as the "Administrative Assistant." The parties on appeal have treated Steward as being the administrative assistant to the board of county commissioners of the defendant county. We shall do the same.

[19] The defendant concedes that the contents of the written report were sufficient to satisfy the statute if the report had been presented to the proper person.

[20] It is not clear from the record on appeal whose officer, agent or employe was the extension agent. On cross-examination Lawson testified that the extension agent is "with the State," but it is not clear whether this testimony was given when the jury was present. We believe that this extension agent was probably an employee of the state. *See,* ORS, ch 566.

In this same respect plaintiff has drawn our attention to certain testimony of Steward in which he stated that he was "available" to "take complaints from citizens." From the transcript of proceedings it appears that all of Steward's testimony was taken out of the presence of the jury; therefore, we are puzzled as to its value but will assume, *arguendo,* that it is true insofar as it aids plaintiff.

[683]

sion agent investigated the matter. Lawson testified that it was up to the extension agent "to check it and see if any damage and what damage there was done."

Quite obviously plaintiff did not comply with the statutory requirement of causing written notice to be presented to the party specified in ORS 15.080. The pertinent parts of ORS 30.275(1) and 15.080 required that a claimant should cause the notice to be presented to the county clerk and to no one else. Plaintiff has presented this case to us as if it were against the board of county commissioners or the road department of the county. It is not. It is against the county, and the statutes are clear. Notice should have been caused to be presented to the county clerk.[21]

Prior to the 1969 amendments to the Tort Claims Act, ORS 30.275(1) required that notice in a claim against the county was to be caused to be presented to the "governing body of" the county. For the sake of argument we shall assume that oral notice here was caused to be presented to the governing body, *i.e.*, the board of county commissioners, by presentation to Mr. Steward in his capacity as administrative assistant to that board, but there is no evidence that written notice was presented even to him. The written notice relied upon by plaintiff to satisfy the statute was presented to the county road department, an agency never specified by the legislature to be a proper recipient.

Not only was no *written* notice ever caused to be presented to the board, but the legislature had apprently made a conscious choice in the 1969 amendments to require a claimant to cause notice to be presented to the county clerk when the claim is against a county.[22] We are not aware of the precise

[21] The pertinent part of ORS 15.080 is not new. It is to be found in Deady's Code of 1862, § 54(2). It was carried forward to Lord's Oregon Laws, § 55, which this court noted required that summons was to be served in an action against the county upon the county clerk. *Holland-Washington Co. v. County Court*, 95 Or 668, 678, 188 P 199 (1920).

[22] This case does not present any question concerning a "home rule" county.

reasons for that legislative change, but it may well have been that the legislature was aware that many counties had procured liability insurance, Or Laws 1967, ch 627, § 6, against such claims and that the county clerk was the choice of the legislature to maintain liaison with the county's insurer with respect to such claims.[23] Whatever the reason, it is clear that the legislature chose that particular county officer and rejected its earlier choice of the board of county commissioners.

We are mindful of the contention that the Court of Appeals and this court have held substantial compliance to suffice when strict compliance did not occur. For this, plaintiff cites *Croft v. Gulf & West. Highway Comm.*, 12 Or App 507, 506 P2d 541 (1973), and *Urban Renewal Agency v. Lackey, supra.* In *Croft* the claim was urged against the "State Highway Commission," and claimant's written notice was presented to the regional engineer of the State Highway Department, who in turn forwarded the information to the chief counsel of the Department. That worthy referred it to the Department's liability insurer, which was, by its contract, the party which would have financial responsibility. The Court of Appeals noted, in holding that there was compliance with the statute, that claimant was not asserting liability against the members of the Highway Commission personally but against the "public agency." The Court of Appeals noted an apparent split of authority among other jurisdictions concerning the matter but was apparently content with the fact that in *Croft* the ultimately, financially responsible party had written notice.

In *Urban Renewal Agency* we held that a counterclaim asserting liability against the public agency was sufficient to comply with the statutes. The case is one

---

[23] There is no evidence in this case that the county had liability insurance against this claim, and our holding is not premised on such a state of facts. We mention the possibility only as a reason the legislature may have amended the Act as discussed.

[685]

in which the notice was presented quite directly to the responsible agency through the agent (the plaintiff's counsel) selected by the public agency to deal with the matter.

Here the record is completely devoid of evidence that the legislatively designated agent of the county, *i. e.*, the county clerk was ever given *any* notice of the claim. Likewise there is no evidence that anyone responsible for deciding whether, or how much, to pay, or even for payment, was given the required notice.

The legislative requirement that written notice be caused to be given to the county clerk in a claim against the county is not a difficult one with which to comply. We can affirmatively say there is no evidence to support a jury finding of compliance, Or Const. Art VII (Amend), § 3, with this rather straightforward, necessary requirement.

Affirmed.