Geraldine STEPHENS,
Personal Representative for
the Estate of Pamela Jennings, Deceased,
*Appellant,*

*v.*

John BOHLMAN, M.D.,
Karl Ordelheide, M.D.
and North Lincoln Hospital,
*Respondents.*

(881548; CA A63947)

813 P2d 43

J. Michael Alexander, Salem, argued the cause for appellant. With him on the briefs was Burt, Swanson, Lathen, Alexander & McCann, Salem.

Keith J. Bauer, Salem, argued the cause for respondent North Lincoln Hospital. With him on the brief were Billy M. Sime and Parks, Bauer & Sime, Salem.

No appearance by respondents John Bohlman, M.D., and Karl Ordelheide, M.D.

Before Warren, Presiding Judge, and Joseph, Chief Judge, and Edmonds, Judge.

WARREN, P. J.

## WARREN, P. J.

Plaintiff, as personal representative of the estate of Pamela Jennings, brought this wrongful death action against North Lincoln Hospital (defendant).[1] The trial court granted defendant's motion for summary judgment on the ground that plaintiff had not given a tort claim notice within one year, as required by ORS 30.275(2)(a). Plaintiff appeals, and we reverse.

We relate the facts in the light most favorable to plaintiff. *Welch v. Bancorp Management Services,* 296 Or 713, 716, 679 P2d 866 (1984). Jennings died May 7, 1986. She had been admitted to the hospital on April 29, 1986, because of chicken pox, and was put on a mechanical respirator. On May 7, she coughed a breathing tube out of her trachea, and a nurse reinserted it, but into her esophagus. Plaintiff, Jennings' mother, was in the room when that occurred, but she could not see what the nurse was doing. Within minutes, Jennings went into respiratory arrest, and plaintiff had to leave the room. After 20 minutes of unsuccessfully trying to treat Jennings for bilateral pneumothorax, Dr. Bohlman discovered that the tube was in her esophagus. By that time, it was too late to save her.

After Jennings died, Bohlman informed plaintiff that she had died from chicken pox and that her heart had stopped. A few weeks later plaintiff again met with Bohlman, who again told her that Jennings had died from chicken pox and did not mention the misplacement of the breathing tube. Plaintiff testified that she believed Bohlman that Jennings had died from chicken pox.

On May 21, 1986, plaintiff received a copy of the preliminary autopsy report, which includes:

> "The following day, [Jennings] again coughed out her nasotracheal tube about the same distance and her oxygen saturation as measured by an ear oximeter dropped from closed [*sic*] to 90 to around 70%. The nasotracheal tube was

---

[1] Plaintiff sued defendant and Drs. Bohlman and Ordelheide for "medical negligence" and deceit. The trial court granted defendant hospital summary judgment on both claims. The doctors moved for summary judgment only on the deceit claims, and their motions were granted. The trial court entered final judgment under ORCP 67B. On appeal, plaintiff assigns error only to the summary judgment on the negligence claim against defendant.

replaced by a nurse and the cuff inflated. Within two minutes of the time the tube had been coughed up, the patient had marked increase in anxiety, became pale and then 'gray.' One minute later, the patient was nonresponsive to verbal command, touch or painful stimuli and a Code 99 was called. Apparently breath sounds were heard in each lung, but because of the patient's distress, a tension pneumothorax was suspected and ultimate thoracotomy tubes were placed in each chest cavity and these yielded only a small amount of serosanguinous fluid. Ultimately, a nurse anesthetist arrived in response to the code and found the nasotracheal tube in the esophagus. He placed a smaller tube with some difficulty because of edema into the trachea. The patient developed ventricular fibrillation and asystole, which were treated, but without the development of a stable cardiac complex and adequate blood pressure."

The hospital also had on file as part of Jennings' hospital chart a history and physical examination report, a special care flow sheet, a death summary prepared by Bohlman and a radiology report. Plaintiff acknowledges that she did not seek those records and was not prevented from doing so. Both the death summary and the radiology report confirmed that the breathing tube was inserted into the esophagus.

Plaintiff discussed the report with her daughter, Sandra, after they had read it. Plaintiff swore in an affidavit that she did not understand the autopsy report. Dr. Brady reviewed the medical record and the autopsy report and concluded that a lay person could not glean from them what had happened, but someone who understood medical terminology could infer that Jennings died from the erroneous placement of the breathing tube.

At some point in 1987, Sandra told plaintiff that she had called an attorney because of doubts that she had about her sister's death, but she did not tell plaintiff what her doubts were. On July 17, 1987, plaintiff met with counsel after Jennings' insurance company denied the claim for life insurance benefits under an accidental death policy, because Jennings had died from a disease. Plaintiff and her attorney then began an investigation of the death. She gave defendant a tort claim notice on April 29, 1988.

Defendant is operated by the North Lincoln Health District, a public body.[2] The parties do not dispute that defendant was entitled to receive a notice of claim within one year after the "alleged loss or injury." ORS 30.275(2)(a).[3] Plaintiff claims that she gave notice within a year after the date when she discovered, or reasonably should have discovered, the injury.

ORS 30.275 contains a two-year limitation period for actions against public bodies, ORS 30.275(8), and a shorter period within which to give notice of the claim. ORS 30.275(2). In *Dowers Farms v. Lake County,* 288 Or 669, 607 P2d 1361 (1980), the Supreme Court held, on the basis of statutory construction, that the two-year limitation begins to run from the date of discovery of the cause of action. In *Adams v. Oregon State Police,* 289 Or 233, 611 P2d 1153 (1980), the Court held that the discovery rule also applies to the notice provision, reasoning that the two periods should commence on the same date. Defendant claims that the discovery rule does not apply to the notice limitation when the action is for wrongful death, relying on *Eldridge v. Eastmoreland General Hospital,* 307 Or 500, 769 P2d 775 (1989). That case held that the discovery rule does not apply to the general wrongful death Statute of Limitations, ORS 30.020(1), because of its specific language that the action shall be commenced within three years "after the occurrence of the injury causing the death of the decedent." That interpretation of ORS 30.020(1) has no bearing on the interpretation of the different language in ORS 30.275. Under ORS 30.275, plaintiff had to give notice and, under *Adams v. Oregon State Police, supra,* she had to give it within one year after discovery of the injury.

---

[2] Although North Lincoln Hospital is named defendant, it is operated by North Lincoln Health District, a public body. No party makes an issue of the fact that the district is not a named defendant.

[3] ORS 30.275 provides, in part:

"(1) No action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of ORS 30.260 to 30.300 shall be maintained unless notice of claim is given as required by this section.

"(2) Notice of claim shall be given within the following applicable period of time, not including the period, not exceeding 90 days, during which the person injured is unable to give the notice because of the injury or because of minority, incompetency or other incapacity:

"(a) For wrongful death, within one year after the alleged loss or injury."

Defendant was entitled to summary judgment only if there is no issue of material fact concerning when plaintiff discovered, or should have discovered, the injury and if that date preceded plaintiff's notice by more than one year. *Gannon v. Rogue Valley Medical Center,* 92 Or App 314, 316, 758 P2d 873, *rev den* 307 Or 145 (1988). A plaintiff should discover that she has a claim when she realizes

"(1) that she has been injured, (2) that the injury can be attributed to an act of the alleged tortfeasor and (3) that the act of the alleged tortfeasor was somehow negligent." 92 Or App at 317.

A plaintiff is held accountable for the facts known and those that could be known through diligent inquiry. *Duncan v. Augter,* 62 Or App 250, 661 P2d 83, *rev den* 295 Or 122 (1983). "The question of when a plaintiff should have discovered the existence of a claim is normally one of fact for the jury." *Gannon v. Rogue Valley Medical Center, supra,* 92 Or App at 316.

Plaintiff contends that she did not discover "the details" of the misplaced tube until July, 1987, when she consulted counsel and they began an investigation. Defendant contends that the medical report and the autopsy information available to plaintiff from shortly after Jennings' death showed that the tube had been erroneously placed in the esophagus. Brady testified that a lay person would not understand the information given to plaintiff.[4] Plaintiff testified that she did not understand the report and that she believed the doctor when he said Jennings had died from chicken pox. We cannot say as a matter of law that plaintiff should have discovered the cause of action before she consulted her attorney in July, 1987. There is a genuine issue of material fact.

Reversed and remanded.

---

[4] The admissibility of that opinion is not before us.