Argued and submitted March 3, decision of Court of Appeals affirmed, judgment of
circuit court reversed and case remanded to circuit court for further proceedings
October 1, 1992

Geraldine STEPHENS,
Personal Representative for the Estate of
Pamela Jennings, Deceased,
*Respondent on Review,*

*v.*

John BOHLMAN, M.D.
and Karl Ordelheide, M.D.,
*Respondents,*

*and*

NORTH LINCOLN HOSPITAL,
*Petitioner on Review.*

(CC 881548; CA A63947; SC S38317)

838 P2d 600

Keith J. Bauer, of Parks, Bauer & Sime, Salem, argued the cause for petitioner on review. With him on the petition was Billy M. Sime, Salem.

J. Michael Alexander, of Burt, Swanson, Lathen, Alexander & McCann, Salem, argued the cause and filed the response for respondent on review.

Before Carson, Chief Justice, and Peterson, Gillette, Van Hoomissen, Fadeley, and Unis, Justices.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Plaintiff, Geraldine Stephens, as personal representative of the estate of her daughter, Pamela Jennings, brought this wrongful death action against defendant North Lincoln Hospital.[1] The trial court granted defendant's motion for summary judgment on the ground that plaintiff had not given defendant a timely tort claim notice. ORS 30.275(2)(a).[2] The Court of Appeals reversed, holding that there is a genuine issue of material fact as to when plaintiff knew or should have known of her claim. *Stephens v. Bohlman*, 107 Or App 533, 813 P2d 43 (1991).

We allowed defendant's petition for review to consider whether the "discovery rule"[3] is applicable to the time within which a notice of claim for wrongful death must be made under ORS 30.275(2)(a) and, if so, whether as a matter of law plaintiff's receipt of a preliminary autopsy report constituted discovery of the injury. We affirm the decision of the Court of Appeals.

■ We review the record on summary judgment in the light most favorable to plaintiff, the person against whom

---

[1] In this opinion, we refer to North Lincoln Hospital as defendant. Plaintiff sued defendant and Drs. Bohlman and Ordelheide for "medical negligence" and deceit. The trial court granted defendant summary judgment on both claims. The doctors moved for summary judgment only on the deceit claims, and their motions were granted. The trial court entered final judgment under ORCP 67B. On appeal, plaintiff assigned error only to the summary judgment on her negligence claim against defendant.

[2] ORS 30.275 provides in part:

"(1) No action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of ORS 30.260 to 30.300 shall be maintained unless notice of claim is given as required by this section.

"(2) Notice of claim shall be given within the following applicable period of time * * *:

"(a) For wrongful death, within one year after the alleged loss or injury."

[3] Normally, a statute of limitation in a tort action begins to run the instant the claim or cause of action accrues. This court, however, has recognized a number of situations in which the statute of limitations does not begin to run, including (1) where the plaintiff is unaware of the identity of the tortfeasor, *Adams v. Oregon State Police*, 289 Or 233, 239, 611 P2d 1153 (1980); (2) where the plaintiff is unaware of the injury, *Dowers Farms v. Lake County*, 288 Or 669, 680-81, 607 P2d 1361 (1981); and (3) where the plaintiff is unaware of the cause of his injury, *Schiele v. Hobart Corp.*, 284 Or 483, 490, 587 P2d 1010 (1978). *Duyck v. Tualatin Valley Irrigation Dist.*, 304 Or 151, 161-62, 742 P2d 1176 (1987).

summary judgment was granted. *Whitaker v. Bank of Newport*, 313 Or 450, 452, 836 P2d 695 (1992).

On April 29, 1986, Pamela Jennings was admitted to North Lincoln Hospital. She was diagnosed as having chicken pox and was placed on a mechanical respirator. On May 7, she coughed a breathing tube out of her trachea. A nurse attempted to reinsert the tube, but misplaced it in Jennings' esophagus rather than in her trachea. Within minutes, Jennings went into respiratory arrest. After 20 minutes of unsuccessfully trying to treat Jennings for bilateral pneumothorax, Dr. Bohlman discovered that the breathing tube was in her esophagus. Jennings died shortly thereafter.

Dr. Bohlman told plaintiff that Jennings had died from chicken pox, and that her heart had stopped. A few weeks later, Dr. Bohlman again told plaintiff that Jennings had died from chicken pox. Plaintiff testified that she believed Dr. Bohlman when he told her that Jennings had died from chicken pox. In his affidavit, Dr. Bohlman stated that he mentioned the misplacement of the breathing tube to the family. The family members denied that he did so. Jennings' death certificate, signed by Dr. Bohlman's partner, Dr. Ordelheide, listed the immediate cause of her death as respiratory failure due to chicken pox.

On May 21, 1986, plaintiff received and read a copy of the preliminary autopsy report, which states in part:

"[Jennings] coughed out her nasotracheal tube * * *. The nasotracheal tube was replaced by a nurse and the cuff inflated. Within two minutes of the time the tube had been coughed up, the patient had marked increase in anxiety, became pale and then 'gray.' One minute later, the patient was nonresponsive to verbal command, touch or painful stimuli and a Code 99 was called. Apparently breath sounds were heard in each lung, but because of the patient's distress, a tension pneumothorax was suspected and ultimate thoracotomy tubes were placed in each chest cavity and these yielded only a small amount of serosanguinous fluid. Ultimately, a nurse anesthetist arrived in response to the code and found the nasotracheal tube in the esophagus. He placed a smaller tube with some difficulty because of edema into the trachea. The patient developed ventricular fibrillation and asystole, which were treated, but without the development of a stable cardiac complex and adequate blood pressure."

Thereafter, plaintiff discussed the autopsy report with her daughter, Sandra, who also had read it. Plaintiff testified that she did not understand the report. Within six months after Jennings' death, plaintiff was "curious" about the cause of the death.

Sometime in 1987, plaintiff's daughter, Sandra, told plaintiff that she had consulted an attorney because of her doubts about the cause of Jennings' death. However, Sandra did not explain to plaintiff what her doubts were.

Plaintiff's witness, Dr. Brady, reviewed the medical record and the autopsy report. He stated in an affidavit that, although a lay person could not tell from the report what caused Jennings' death, a person with knowledge of medical terminology could infer that she had died because the nurse had misplaced the breathing tube.

The hospital also had on file as part of Jennings' hospital chart a history and physical examination report, a special care flow sheet, a death summary prepared by Dr. Bohlman, and a radiology report. Both the death summary and the radiology report disclosed that the breathing tube was inserted into Jennings' esophagus. Plaintiff acknowledges that she neither sought those records nor was prevented from doing so.

On July 17, 1987, plaintiff consulted a lawyer, who began an investigation of Jennings' death.[4] At that time, plaintiff contends that she first became aware of the misplacement of the breathing tube. On April 29, 1988, plaintiff gave defendant a tort claim notice. ORS 20.275(2)(a). Plaintiff does not dispute that defendant was entitled to receive a notice.[5] The trial court granted defendant's motion for summary judgment on the ground that the notice was not timely filed. Plaintiff appealed.

The Court of Appeals held that the one-year limitation period on giving a tort claim notice under ORS 30.275(2)

---

[4] An application had been made for life insurance benefits under an accidental death policy, but had been denied on the ground that the apparent cause of death was a disease.

[5] Although North Lincoln Hospital is named defendant, it is operated by North Lincoln Health District, a public body. No party makes an issue of the fact that the district is not a named defendant.

begins to run from the date when a plaintiff has a reasonable opportunity to discover the injury and the identity of the party responsible for that injury. The court rejected defendant's argument that, as a matter of law, plaintiff knew or should have known the basis of the claim before July 17, 1987, when she first contacted an attorney, and held that there is a genuine issue of material fact about when plaintiff knew or should have known of the claim. Accordingly, the court reversed and remanded the case for trial. We allowed defendant's petition for review to examine whether the discovery rule extends the time for filing a notice of tort claim in a wrongful death claim against a public body and, if so, whether there is a question of fact concerning when plaintiff knew or should have known of the claim.

In support of its contention that the Court of Appeals erred in reversing the trial court's judgment, defendant first argues that the discovery rule does not extend the time for filing a notice of tort claim in a wrongful death claim against a public body and, therefore, plaintiff's claims are barred because plaintiff failed to provide defendant with a notice of tort claim within one year after Jennings' death. Defendant relies primarily on *Eldridge v. Eastmoreland General Hospital*, 307 Or 500, 769 P2d 775 (1989). That case held that the discovery rule did not apply under ORS 30.020(1) (1989), a wrongful death statute which does not apply to tort actions against public bodies. Defendant argues, however, that the language of ORS 30.020(1) was similar to that of ORS 30.275 and that that shows the legislature did not intend the discovery rule to apply in wrongful death claims against public bodies under ORS 30.275. Defendant is mistaken. In *Eldridge v. Eastmoreland General Hospital, supra*, 307 Or at 505, this court held that the legislative history of ORS 30.020 (1) made it clear that the legislature specifically intended that the discovery rule would not apply when it enacted that statute. Defendant points to no similar legislative history here, and we know of none.

In *Dower Farms v. Lake County*, 288 Or 669, 681, 307 P2d 136 (1980), this court held that the two-year Tort Claims Act statute of limitations did not begin to run until a plaintiff discovers the harm caused by a defendant's actions. In that case, this court noted that the Tort Claims Act was

intended to be remedial legislation, allowing all citizens to seek redress for any tort committed by their governments, except for the specific immunities listed in the statutes, and that a narrow construction of the provisions of the Act would be contrary to its general purposes. *Id.* at 680.

■■   In *Adams v. Oregon State Police*, 289 Or 233, 239, 611 P2d 1153 (1981), this court again applied the discovery rule to a provision of the Tort Claims Act, holding that the notice period (then contained in ORS 30.275(1)) commenced on the date the plaintiff discovered the identity of the tortfeasor, rather than on the date of the incident precipitating the plaintiff's injury. In *Adams*, this court followed the rationale of *Berry v. Branner*, 245 Or 307, 312, 421 P2d 996 (1966):

> "To say that a cause of action accrues to a person when she may maintain an action thereon and, at the same time, that it accrues before she has or can reasonably be expected to have knowledge of any wrong inflicted upon her is patently inconsistent and unrealistic. She cannot maintain an action before she knows she has one. To say to one who has been wronged, 'You have a remedy, but before the wrong was ascertainable to you, the law stripped you of your remedy,' makes a mockery of the law."

In *Eldridge v. Eastmoreland General Hospital, supra*, 307 Or at 505, we noted that "*Adams* and *Dower Farms* thus were cases of statutory interpretation in which this court found no reason in statutory language to defeat the function and purpose of the discovery rule." We reaffirm this court's holdings in *Dower Farms* and *Adams* that the discovery rule applies to the Tort Claims Act.[6] Because different statutes (with different legislative histories) were involved, we find no inconsistency between the interpretation in *Eldridge* and the interpretations in *Dower Farms* and *Adams*.

Defendant next argues that, even if the discovery rule applies, as a matter of law plaintiff discovered the claim when she received the preliminary autopsy report, which showed that the breathing tube had been misplaced in the

---

[6] Statutory interpretation particularly implicates the rule of *stare decisis*. When this court interprets a statute, that interpretation becomes a part of the statute as if written into it at the time of its enactment. *Walther v. SAIF*, 312 Or 147, 149, 817 P2d 292 (1991).

esophagus, and plaintiff's claims are barred because the notice of tort claim was filed more than one year after the date that plaintiff received the report. Defendant asserts that the report clearly disclosed all the facts underlying the present claim and, therefore, plaintiff should be deemed to have known of her claim in May 1986 when she read the report. Defendant argues that a reasonable person would have known of plaintiff's claim when he or she read in the autopsy report that

> "The nasotracheal tube was replaced by a nurse * * *. Ultimately a nurse anesthetist * * * found the nasotracheal tube in the esophagus. He placed a smaller tube with some difficulty * * * into the trachea."

None of the language in the autopsy report, however, indicates that the breathing tube in the esophagus was *mis*-placed or incorrectly placed there; it indicates only that the tube was "replaced by a nurse." To replace means to "restore to a former place, position, or condition." Webster's New International Dictionary (3d ed 1976). Formerly, the breathing tube was in Jennings' trachea. The report does not as a matter of law indicate that the placement of the tube in Jennings' esophagus caused her death. Moreover, the official death certificate certified by Dr. Ordelheide did not tell plaintiff that misplacement of the tube caused the death. Rather, the certificate listed the cause of death as respiratory failure due to chicken pox. Defendant's argument is that a reasonable person would have inferred from the fact that the breathing tube was found in Jennings' esophagus that the nurse had negligently placed it there. Some persons might so infer, but we are not convinced that a reasonable person *must* so infer. Thus, we cannot say as a matter of law what a reasonable person would conclude from reading the report. We are not persuaded that the report gave plaintiff constructive notice of her claim against defendant. It may be that, at trial, the evidence will show that plaintiff did have notice of her claim. We do not find, however, that the record on summary judgment is sufficient for the trial court to say as a matter of law that the statute has run.[7]

---

[7] Defendant also contends that the Court of Appeals erred in relying on Dr. Brady's affidavit. Defendant argues that the affidavit contains matter that would not have been admissible at trial and, therefore, that it should not have been considered, citing ORCP 47D. Defendant argues that Brady's opinion would not be admissible

In summary, we hold that the discovery rule applies to a tort claim for wrongful death against a public body under ORS 30.275(2)(a). We further hold that there is a genuine issue of material fact as to when plaintiff should have discovered her cause of action. The determination whether plaintiff exercised due diligence under the circumstances of this case should be left to the trier of fact.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

under OEC 702, because it would not assist the trier of fact to understand the evidence, and that the autopsy report was clear enough to convey an understanding of the relevant facts. Brady testified that a lay person would not understand the information given to plaintiff.

Plaintiff argues, correctly, that defendant never posed an objection to Brady's affidavit, either at trial or before the Court of Appeals. Indeed, the only mention of the affidavit appears in defendant's factual summary in its Court of Appeals brief. We conclude that the issue defendant now argues was not raised below or preserved for appeal and therefore we decline to consider it.