Argued and submitted July 25, 1995, affirmed January 3, petition for review denied July 30, 1996 (324 Or 18)

Geraldine STEPHENS,
Personal Representative of the Estate
of Pamela Jennings, Deceased,
*Respondent,*

*v.*

John BOHLMAN, M.D.,
*Appellant,*

*and*

Karl ORDELHEIDE, M.D.,
and North Lincoln Hospital,
*Defendants.*

(881548; CA A83842)

909 P2d 208

Gregory B. Snook argued the cause for appellant. With him on the briefs was Kilmer, Voorhees & Laurick, P.C.

J. Michael Alexander argued the cause for respondent. With him on the brief was Burt, Swanson, Lathen, Alexander, McCann & Smith, P.C.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

**WARREN, P. J.**

Defendant, a physician, appeals a judgment entered on a verdict for plaintiff in this medical malpractice case. He challenges the trial court's failure to dismiss plaintiff's claims against North Lincoln Hospital (hospital), a codefendant, before the close of the evidence and its refusal to give his requested jury instruction concerning medical judgment. We affirm.

This case was previously before us on plaintiff's appeal of the trial court's grant of summary judgment in favor of hospital based on plaintiff's alleged failure to give a timely tort claims notice. We reversed, and the Supreme Court affirmed our decision. *Stephens v. Bohlman*, 107 Or App 533, 813 P2d 43 (1991), *aff'd* 314 Or 344, 838 P2d 600 (1992). The opinions on the previous appeal describe most of the relevant facts. In short, plaintiff is the personal representative of Jennings, who died while being treated at the hospital for chicken pox; defendant was her treating physician. During the treatment, defendant placed Jennings on a respirator, using an endotracheal breathing tube. When Jennings coughed the tube out of her trachea, hospital's respiratory therapist reinserted it into her esophagus rather than her trachea. Jennings soon became unconscious and unresponsive. Defendant responded to the resulting emergency "code" and attempted to treat her respiratory arrest; neither he nor any hospital employee discovered that the tube was misplaced. Jennings died from lack of oxygen.

After the remand in the previous appeal, plaintiff dismissed her claims against Ordelheide, defendant's partner, and reached a settlement with hospital. The nature and effect of that settlement is the basis of defendant's first two assignments of error.

The settlement between hospital and plaintiff was an attempted "Mary Carter" agreement. *See Grillo v. Burke's Paint Co., Inc.*, 275 Or 421, 551 P2d 449 (1976).[1] Under the

---

[1] A "Mary Carter" agreement is an agreement between the plaintiff and some, but fewer than all, of the defendants under which the settling parties limit the financial responsibility of the settling defendants, usually in an inverse ratio to the recovery that the plaintiff is able to make against the nonsettling defendants. *Grillo v. Burke's Paint Co., Inc.*, 275 Or 421, 425 n 1, 551 P2d 449 (1976).

agreement, hospital paid plaintiff $90,000, in return for which plaintiff agreed not to execute on any judgment that she might receive against hospital, released hospital from any liability in excess of $90,000, and agreed never again to sue hospital as a result of the events involved in this lawsuit. Hospital, for its part, agreed to remain as a defendant in the lawsuit through its case in chief; plaintiff would present her claim, and hospital would present its defenses, as though they had not reached a settlement.[2]

Although hospital agreed nominally to remain in the case, its payment of $90,000 was absolute; nothing in the agreement entitles it to recover any portion or to pay any additional amount no matter what the outcome of the lawsuit against defendant. Thus, hospital's only purpose for appearing at the trial was to fulfill its contractual obligation to plaintiff because it had no interest in the outcome.[3] At the close of the evidence plaintiff, in accordance with the settlement, moved to dismiss its claims against hospital; the court granted that motion. The effect was that throughout the presentation of evidence hospital appeared to the jury to be an active party to the case. The jury learned of the settlement during closing arguments only because defendant decided that it was strategically necessary to let it know hospital's true role.

In accordance with ORS 18.455, plaintiff and hospital notified defendant of the terms of the settlement. Both before and during the trial, defendant moved to dismiss hospital as a party on the ground that there was no justiciable controversy between it and plaintiff but the court denied the motions. The first issue is whether those rulings were prejudicial error.

In a true Mary Carter agreement, the settlement limits the settling defendant's liability in a variable amount, usually in some inverse ratio to the plaintiff's recovery against the nonsettling defendants. Thus, in *Grillo*, the settling defendant "loaned" the plaintiff $16,000 under an

---

[2] Hospital also agreed to use its best efforts to make its employees and former employees available for testimony at plaintiff's request.

[3] Hospital in fact presented its case so vigorously that the court commented that it had forgotten that there was a settlement.

agreement that the plaintiff would repay all or part of the loan only if it recovered on its claim against the other defendant. 275 Or at 423-25. As a result of that agreement, it was in the settling defendant's interest for the plaintiff to receive as large a recovery against the other defendant as possible. Although, as a result of the settlement, the settling defendant's interest in the cases became adverse to that of the other defendant, the settling defendant clearly retained an interest in the outcome.

The agreement between plaintiff and hospital in this case is different from a true Mary Carter agreement in that plaintiff had no obligation to repay any part of the settlement amount under any circumstances. The hospital thus had no interest in the outcome of the case against defendant because it could neither gain nor lose anything as a result of the trial. In no circumstance would the jury's verdict affect hospital. Indeed, in no circumstance would the jury even consider the issues to which hospital directed its primary attention at trial. Hospital remained in the case only to put on a defense because it had promised plaintiff that it would do so. There was no context in which the jury would determine hospital's share of liability for Jenning's death. Plaintiff and hospital, in short, agreed to try a moot case.

The case was moot because there was no way that the trial could have affected the rights of plaintiff and hospital between themselves. That hospital assumed a contractual obligation to proceed as though it had not settled is irrelevant to this decision; when the parties have actually resolved a controversy, they cannot give it substance by agreeing to pretend otherwise. Although hospital apparently honored its obligation to proceed as if it were a viable party, in fact it acted a sham; a pretense of adversity, no matter how well played, does not avoid mootness. *Cf. Oregon Medical Association v. Rawls*, 281 Or 293, 574 P2d 1103 (1978) (legislature cannot create case for courts to decide when parties are not in fact adverse). A court should dismiss as moot a case in which the court's decision could have no practical effect on or concerning the rights of the parties; this is true whether or not the case is technically justiciable. *Brumnett v. PSRB*, 315 Or 402, 405-06, 848 P2d 1194 (1993). *See also Cox v. Kelsey-Hayes Co.*, 594 P2d 354, 359 (Okla 1979) (if a pretrial agreement

completely settles a case between the plaintiff and one defendant, the court should dismiss the settling defendant as being unnecessary to the disposition of the case).

The trial court erred in failing to dismiss hospital as a party before the trial began.[4] However, it was reversible error as to defendant only if the court's failure to dismiss the case against hospital substantially prejudiced defendant in the conduct of the case. ORS 19.125(2). Defendant argues that the hospital's participation in the trial allowed plaintiff to present evidence in its case against the hospital that would have been inadmissible in a case against defendant alone.[5] Plaintiff responds that the evidence about which defendant complains would have been admissible even if hospital had not been a party.

The evidence primarily in issue tended to show that defendant, Ordelheide, and hospital joined to conceal the true cause of Jennings' death from plaintiff. Defendant asserts that that evidence was relevant only to plaintiff's allegation that she did not know or have reason to know of hospital's negligence until some time after Jennings' death and, thus, that she filed the tort claims notice within the statutory period. His state of mind after Jennings' death, he argues, was not relevant to show whether he was negligent in treating her before her death.

Defendant is wrong. Evidence that defendant participated in covering up the true cause of Jennings' death could tend to show that he believed that the truth was damaging to him. It is, thus, circumstantial evidence of his belief that he had acted negligently. Wilful suppression of evidence raises an unfavorable presumption against the party who suppressed it. OEC 311(1)(c); *Booher v. Brown*, 173 Or 464, 474, 146 P2d 71 (1944). For similar reasons, evidence that an alleged tortfeasor attempted to conceal the true cause of the

---

[4] We do not need to decide whether the recent legislative changes to joint and several liability affect this conclusion. Those changes apply only to causes of motion arising on or after the effective date of the statute that enacted them. Or Laws 1995, ch 696, § 7.

[5] Defendant does not assert that he asked the court to instruct the jury that any of the questionable evidence was admissible solely against hospital.

injury at least permits a jury to draw an unfavorable inference. The evidence, therefore, was admissible.[6]

■ Defendant also assigns as error the trial court's refusal to give his requested jury instruction on "medical judgment." He asserts that the requested instruction resolved the problems that the Supreme Court found with a similar instruction in *Rogers v. Meridian Park Hospital*, 307 Or 612, 772 P2d 929 (1989). He argues that his theory of the case was that he exercised judgment in choosing between alternate courses of conduct in treating Jennings and that he was entitled to have the jury instructed on that theory. *See Chan v. Fred Meyer*, 71 Or App 20, 23, 691 P2d 150 (1984) (court must instruct jury on a party's theory of the case if there is evidence to support it).

We do not need to decide whether a medical judgment instruction is ever proper after *Rogers* or, if one could be proper, whether defendant's proposed instruction correctly states the law. Defendant points us to two portions of the evidence that, he says, support such an instruction. However, those portions contain evidence that defendant's actions met the standard of care. Neither contains any testimony that defendant faced a situation in which either of two or more courses of conduct would have been reasonable and within the standard of care and that he reasonably took one of those courses. That, however, is the only situation in which the medical judgment instruction might be proper. The trial court did not err in refusing to give the proposed instruction.

Affirmed.

---

[6] We reject defendant's assertion that hospital's participation at trial damaged him in less tangible ways.