Argued and submitted June 3, affirmed December 9, 1998

# Kim SEIDEL
## and Holly Seidel,
### *Respondents,*

### *v.*

# TIME INSURANCE COMPANY,
## a Wisconsin corporation,
### *Appellant.*

## (960402696; CA A97650)

### 970 P2d 255

Richard Baroway argued the cause for appellant. With him on the briefs were David L. Canary, Lisa T. Murphy, and Garvey, Schubert & Barer.

Willard E. Merkel argued the cause for respondent. With him on the brief was Popick & Merkel.

Before Landau, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.

LANDAU, P. J.

---

* Deits, C. J., *vice* Riggs, J., resigned.

## LANDAU, P. J.

Plaintiffs initiated this action for breach of an insurance contract, alleging defendant's failure to pay medical bills. Defendant counterclaimed for rescission, alleging that plaintiffs made material misrepresentations or omissions in their application for insurance. Defendant unsuccessfully moved for summary judgment and for a directed verdict. The jury found in favor of plaintiffs, and the trial court entered judgment in favor of plaintiffs. Defendant appeals, assigning error to the denial of the motions and to the trial court's failure to deliver requested jury instructions. We affirm.

The evidence, viewed in the light most favorable to plaintiffs, shows that plaintiffs' 16-year-old son, Bryan, was in a car accident on May 11, 1995, and that he went to the hospital emergency room after the accident, complaining of chest and neck pain. Tests were conducted, and Bryan was diagnosed with neck strain and post-concussion syndrome. Bryan experienced head and neck pain after the accident. He was released from medical care without restriction on July 17, 1995, with a diagnosis of "Post-concussion syndrome - Resolving."

On July 26, 1995, plaintiffs met with defendant's agent, Harris, to discuss purchase of a family health insurance policy from defendant. Harris asked plaintiffs each of the questions on the application form and recorded their answers. The application contained these questions:

"Within the last 10 years * * * has any person to be insured:

"15.   Had any diagnosis, or treatment of:

"* * * * *

"d)   The nervous system including epilepsy, convulsions, headaches, paralysis, Parkinsonism or stroke?

"* * * * *

"h)   The muscular or skeletal system including arthritis, gout, rheumatism, any back or spine disorder, or treatment of any muscular or neuromuscular disorder?

"* * * * *

"19. Had an electrocardiogram, chest x-ray, blood study or any other diagnostic testing of any kind or been hospital confined in the last 10 years * * *?

"* * * * *

"23. Is any person to be insured currently taking or taken within the past 3 months, medication or receiving medical treatment of any kind?"

Plaintiffs described Bryan's accident and treatment to Harris, but Harris advised them that the matter was not significant and did not need to be mentioned on the application. Harris recorded the answer "no" to each of the foregoing questions. Plaintiffs signed the application, and defendant issued a policy effective August 15, 1995.

Shortly thereafter, Bryan began to have more serious headaches. An MRI scan performed on September 11, 1995, revealed that he had a brain tumor unrelated to the earlier injury, for which he underwent hospitalization and surgery. Defendant preauthorized the treatment and requested Bryan's medical records as part of the preauthorization process. Upon receipt of the medical records, defendant's underwriter learned of Bryan's motor vehicle accident, declined to cover the treatment of Bryan's brain tumor, and immediately declared the policy rescinded.

Plaintiffs sought damages for breach of the insurance agreement, and defendant filed a counterclaim for rescission, asserting that it would not have issued the policy had it known of Bryan's injury. Defendant moved for summary judgment on both plaintiffs' claim and its counterclaim. Defendant argued that it was entitled to rescind, because plaintiffs made material misstatements or omissions that induced it to provide insurance coverage that it otherwise would have declined. Plaintiffs opposed the motion, arguing that genuine issues of material fact existed as to whether they made any material misstatements or omissions. The trial court denied defendant's motion.

At trial, defendant offered the testimony of one of its senior underwriters, who testified that the alleged misrepresentations concerning Bryan's health history were material to defendant's decision to issue a policy and that, at the time

of the application, Bryan was uninsurable. The trial court also admitted into evidence defendant's guidelines for the underwriting of individuals who have suffered head injuries, including "suggested actions" for head injuries when there has been complete recovery with no residuals and head injuries with residuals. The guidelines suggest that for head injuries with complete recovery, the underwriter should decline an application if recovery was less than three months before the time of the application. For incomplete recovery, with a residual of post-concussion syndrome, the guidelines suggest that the matter be referred to the medical director. Defendant moved for a directed verdict, once again asserting that it had established as a matter of law that it was entitled to rescind its policy of insurance. The trial court denied the motion. Defendant then asked the court to deliver two jury instructions to the effect that misrepresentations and omissions may be material even if unrelated to the specific claim for which coverage was denied and that the misrepresentations or omissions need not have been intentional to form the basis for rescission. The court declined to deliver the instructions.

The jury found in favor of plaintiffs. It rejected defendant's rescission counterclaim by a special verdict finding that the alleged misrepresentations were not material, and the trial court awarded a stipulated amount of damages to plaintiffs.

■ On appeal, defendant first contends that the trial court erred in denying the motion for summary judgment. An order denying summary judgment is not reviewable unless it rests on a "purely legal contention" that does not require the establishment of any predicate facts. *Payless Drug Stores v. Brown*, 300 Or 243, 246, 708 P2d 1143 (1985). Purely legal contentions are those as to which the facts are not merely undisputed but immaterial, such as a facial challenge to the constitutionality of a statute. *Id. See also Heidtke v. Int'l Brotherhood of Boilermakers*, 104 Or App 473, 475, 801 P2d 899 (1990). In this case, defendant's summary judgment motion did not rest on a purely legal contention but on the asserted legal significance of adjudicative facts. The denial of that motion, therefore, is not reviewable.

Defendant next contends that the trial court erred in denying its motion for directed verdict on its counterclaim for rescission. According to defendant, the evidence admitted permitted no reasonable dispute that plaintiffs' misrepresentations or omissions were material, thus justifying the rescission of the policy. Plaintiffs contend that the trial court correctly denied the motion for two reasons. First, plaintiffs contend that the evidence showed that there was, in fact, no misrepresentation or omission, because they informed defendant's agent Harris about Bryan's automobile accident, and he told them not to include that information in their application. Second, plaintiffs contend that, even assuming that there were misrepresentations or omissions, there was at least a jury question as to their materiality.

In reviewing the denial of a directed verdict, we will reverse only when there is a complete absence of evidence from which a jury could find the facts necessary to support the verdict. *Cole v. Ford Motor Co.*, 136 Or App 45, 49, 900 P2d 1059 (1995).

An insurer may rescind an insurance contract under the limited circumstances set out in ORS 742.013(1) which provides, in part:

"Misrepresentations, omissions, concealments of facts and incorrect statements shall not prevent a recovery under the policy unless the misrepresentations, omissions, concealments of fact and incorrect statements:

"(a) Are contained in a written application for the insurance policy, and a copy of the application is indorsed upon or attached to the insurance policy when issued;

"(b) Are shown by the insurer to be material, and the insurer also shows reliance thereon; and

"(c) Are either:

"(A) Fraudulent; or

"(B) Material either to the acceptance of the risk or to the hazard assumed by the insurer."

Thus, to prevail on a claim for rescission, an insurer must prove, among other things, that the insured made a misrepresentation or omission and that the misrepresentation or

omission was material to the decision to accept the risk of insurance. To prevail on its directed verdict motion as to its rescission claim, defendant must establish that there was no evidence from which a jury could conclude either that plaintiffs made no misrepresentations or omissions or that the misrepresentations or omissions were immaterial.

■■    In this case, there was evidence from which a reasonable jury could find that Harris, defendant's agent, told plaintiffs that the information concerning Bryan's injury did not need to be included in the application and that Harris made the decision to omit that information from the application. ORS 744.165 provides that a person who solicits and procures an application for insurance "shall in all matters relating to the application for insurance and the policy issued in consequence of the application be regarded as the agent of the insurer issuing the policy and not the agent of the insured." An insurer is charged with the knowledge of its agent and may not rescind a policy based on a false application if the agent has knowledge of the misrepresentation. *State Farm Fire v. Sevier*, 272 Or 278, 289, 537 P2d 88 (1975); *Bunn v. Monarch Life Insurance*, 257 Or 409, 416, 478 P2d 363 (1970). In preparing the application, Harris acted as defendant's agent, and defendant is charged with knowledge of any incorrect answers that Harris may have provided. Because there was evidence from which the jury could find that Harris knowingly recorded the incorrect information on the application, the trial court did not err in denying defendant's motion for a directed verdict.

Defendant also asserts that the trial court erred in failing to give the precise jury instructions it requested. We have reviewed the instructions actually given and conclude that they completely and correctly described the relevant law and that the trial court's failure to give the exact instructions requested did not create an erroneous impression in the minds of the jurors. For those reasons, the court did not err in failing to give the requested instructions. *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 106, 957 P2d 147 (1998).

Affirmed.