Argued and submitted June 14, affirmed October 10, 2001

Mildred JASMIN,
*Respondent,*

*v.*

Robert ROSS, Jr.,
*Appellant,*
*and*

Debra Sue ROSS,
*Defendant.*

98-2180; A108751

33 P3d 725

Karen O'Kasey argued the cause for appellant. With her on the opening brief was Schwabe, Williamson & Wyatt, P.C. With her on the reply brief were Michael T. Garone and Schwabe, Williamson & Wyatt, P.C.

David Slader argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges

SCHUMAN, J.

## SCHUMAN, J.

■■ At the age of 30, plaintiff sued defendant, her step-mother's brother, for damages resulting from his sexual abuse of her when she was between the ages of 10 and 17. Defendant[1] moved for a directed verdict on the ground that plaintiff failed to file her claim within the time limits established by statute. The trial court denied defendant's motion, and a jury ultimately awarded plaintiff $325,000 in damages. Defendant appeals, assigning error to the trial court's denial of his motion for a directed verdict. To prevail on appeal, defendant must overcome a daunting standard of review: When a trial court denies a motion for a directed verdict, the appellate court may reverse and order dismissal only if it concludes that "there is a complete absence of evidence from which a jury could find the facts necessary to support the verdict." *Seidel v. Time Ins. Co.*, 157 Or App 556, 561, 970 P2d 255 (1998); *see also Talbert v. Farmers Ins. Exchange*, 166 Or App 599, 607, 5 P3d 610, *rev den* 330 Or 553 (2000); *Cole v. Ford Motor Co.*, 136 Or App 45, 49, 900 P2d 1059 (1995). Further, we review the evidence in the light most favorable to the plaintiff. *Reams v. Keen*, 314 Or 370, 373 n 2, 838 P2d 1073 (1992). Under these standards, we affirm.

Defendant began sexually molesting plaintiff on a regular basis when she was around 10 years old, persuading her that he cared for her deeply and that they had a special relationship. By the time she reached her teens, plaintiff believed that she and defendant were in love with each other. Although he told her not to tell anyone about their relationship, it came to light when, at the age of 14, plaintiff talked about it to her stepmother and other members of her family. They responded by forbidding her to see defendant, but she continued to meet him in secret and the sexual activity continued as well. When she was 17, she told a school friend about her relationship with her stepuncle. The friend reported the situation to school authorities. An investigation ensued; plaintiff related her situation to police and child protective authorities, but nobody pursued criminal charges, and the relationship continued in secret. Soon, however,

---

[1] Debra Sue Ross was dismissed from the case by stipulation of the parties.

plaintiff's father learned that plaintiff had been lying to him about the relationship. Caught in a conflict of loyalty and affection between her father and her stepuncle, she attempted to commit suicide. Soon afterward, she moved out of state.

As an adult, plaintiff has experienced a variety of psychological problems: inability to maintain relationships, drug and alcohol abuse, self-mutilation, explosive anger, and violence toward others. Her marriage ended after five years, and, at the time, she attributed its demise to her lingering love for defendant. She has repeatedly sought counseling in an attempt to deal with her problems. Although she would disclose the sexual aspect of the relationship on medical and mental health intake forms, she continued to deny that the relationship was abusive or exploitative.

That situation changed, however, in July 1997, when she renewed her acquaintance with the high school friend in whom she had confided while young. A conversation with him regarding their teenage years triggered plaintiff's realization that the relationship with her stepuncle was abusive rather than romantic. A mental health counselor, Julie O'Donnell, treated plaintiff shortly after this realization and diagnosed her as suffering from Post Traumatic Stress Disorder (PTSD), a condition common among adult survivors of childhood sexual abuse. According to O'Donnell, these survivors typically believe their abusers' protestations of love and that their relationship is normal, romantic and consensual. They do not interpret what is happening to them as abuse, but as love and affection, and they may continue in that belief well into adulthood. O'Donnell testified that when she began treating plaintiff in early 1998, plaintiff had only recently begun to identify the sexual abuse in her past as the cause of her current mental health problems. Plaintiff filed her complaint shortly thereafter, on July 16, 1998.

The issue on appeal is whether plaintiff met the statute of limitations for child sex abuse claims, ORS 12.117, which provides:

"[A]n action based on conduct that constitutes child abuse * * * accruing while the person who is entitled to bring the action is under 18 years of age shall be commenced not more

than six years after that person attains 18 years of age, or if the injured person has not discovered the injury or the causal connection between the injury and the child abuse, nor in the exercise of reasonable care should have discovered the injury or the causal connection between the injury and the child abuse, not more than three years from the date the injured person discovers or in the exercise of reasonable care should have discovered the injury or the causal connection between the child abuse and the injury, whichever period is longer."

This statute establishes a general rule that child abuse claims must be filed not more than six years after the plaintiff reaches 18 years of age. It also establishes a different time limit for plaintiffs who qualify for a "delayed discovery" exception. Plaintiffs qualify for the extended filing period if they did not discover the injury while under 18; alternatively, they qualify if, while under 18, they discovered the injury but did not discover that it was caused by the child abuse. In either case, the time limit applies only if the nondiscovery was reasonable. If a plaintiff qualifies for the extended limitation period, she may file her action within three years of the time she discovered, or should have discovered, the injury or the connection between the injury and the abuse, whichever period is longer.[2]

Plaintiff did not file before her 24th birthday. Therefore, her action was timely only if (1) she qualifies for the exception and (2) she met the time limits that it establishes. Defendant's first argument—that plaintiff knew of her injury and its cause before she was 18—attacks her eligibility for the extended period. His second argument—that, even if plaintiff did not discover her injury and its cause before the age of 18, she nonetheless made or should have made that discovery more than three years before filing her claim—is an assertion that even if she qualifies for the extended filing period, she did not meet it. Both of these arguments fail under the appropriate standard of review if plaintiff presented evidence that she first discovered the injury or its

---

[2] This case does not require us to decide, and we do not decide, if claims by victims whose discovery occurs after the age of 18 and before the age of 21 may be filed up to the victims' 24th birthday or if they are governed by the "three years from discovery" rule.

causal connection to the child abuse after June 16, 1995, and that the delayed discovery was not due to lack of reasonable care.

■ To address defendant's arguments, we must first examine the word "injury," which is not defined in ORS 12.117. Plaintiff maintains that "injury" means "the long-term psychological damages that continue to flow from the abuse long into the victim's adulthood." Defendant argues that we should adopt the definition that the Supreme Court crafted in *Gaston v. Parsons,* 318 Or 247, 255, 864 P2d 1319 (1994), where the term was defined for purposes of the medical malpractice statute of limitations: "[I]njury * * * consists of three elements: (1) harm; (2) causation; and (3) tortious conduct." We need not decide which, if either, of these definitions is correct,[3] because under either, plaintiff prevails if she presented any evidence from which a jury could find that she did not discover, nor in the exercise of reasonable care should she have discovered, facts creating a substantial possibility that her psychological or emotional injuries resulted from defendant's sexual abuse of her. We reemphasize that the inquiry is neither whether such evidence outweighed contrary evidence, nor whether it was "substantial"; she prevails unless "there is a complete absence of evidence from which a jury could find the facts necessary to support the verdict." *Seidel,* 157 Or App at 561.

Although there is evidence that in her teenage years plaintiff was aware of the conduct that constituted the abuse

---

[3] No plausible definition of "injury" can make perfect sense in this statute. Plaintiff's definition cannot stand in the context of the statute's statement of the general rule. That rule applies to victims who discover the injury before they are 18, and plaintiff's definition presumes that injury cannot occur until adulthood. Defendant's definition, in which "injury" includes an element of causation, makes both sides of a disjunctive statement the same: the event triggering the statutory period is *either* discovery of the injury, including its cause, *or* discovery of the injury, including its cause. A definition equating the "injury" with the abusive conduct itself makes the statute unintelligible: the statute treats the abuse and the injury as logically and temporally distinct concepts, in that the "abuse" is said to *cause* the "injury," and a thing cannot cause itself. Indeed, regardless of how the word "injury" is defined, the second side of the disjunctive will *always* be superfluous: it is not possible for one to have discovered an injury and its cause without having discovered the injury, and discovering the injury suffices to trigger the limitation period.

and also began to develop some of the psychological conditions she now attributes to that conduct, there also is ample evidence that she did not discover that those symptoms were caused by sexual abuse until almost a decade later, and within three years of filing her claim. There is ample evidence from which a jury could find that, before 1995, plaintiff did not believe that her problems were caused by defendant's sexually abusive conduct; in her mind, the problems were caused not by sexual abuse but by a failed romance. In support of his argument that plaintiff did make the necessary connection before 1995, defendant points to evidence that she routinely disclosed the abuse when filling out medical and mental health questionnaires and often discussed those questionnaires with mental health counselors.

That evidence, however, is controverted by plaintiff's and O'Donnell's testimony that, although plaintiff has always been aware of the fact of the abuse in her past, her distorted perception of the nature of her relationship with her stepuncle prevented her from coming to terms with the role that the sexual aspects of that relationship played in causing her present emotional and relationship problems. For example, defendant argues that Clatsop County Mental Health Center records from 1993 indicate that plaintiff discussed the abuse during treatment. The Clatsop County records on which defendant relies indicate that, during a 1993 initial intake assessment, plaintiff disclosed that she had been sexually abused as a child and that, at the time she terminated treatment at the center, her "memories of childhood abuse" were "resurfacing recently." The notes do not suggest, however, that plaintiff had yet made any progress towards connecting the abuse in her past to her current problems and, in fact, indicate that plaintiff was primarily concerned at the time with finding ways to control her depression and explosive outbursts of anger. There is no indication that, either during or as a result of that therapy, plaintiff further explored those insights or had begun to draw any connection between her past experiences and present emotional problems. In a similar vein, defendant points to another instance in 1994 when plaintiff may have indicated to a counselor that she confused love and sex due to the relationship

with her stepuncle. When asked about that instance, however, plaintiff testified that in 1994 she was just beginning to question whether such a connection might exist.

Plaintiff testified that she first began to make that connection in July 1996 and that she did not seriously consider that her symptoms were caused by defendant's sexual conduct before that time. Moreover, her current therapist testified that, due to her PTSD, plaintiff was unable to confront the root cause of her problems for many years. Thus, although there is conflicting evidence in the record, we are unable to say that plaintiff presented no evidence that she was unaware of a substantial possibility of a causal relationship between defendant's conduct and her emotional and psychological problems before 1995.

There is also sufficient evidence from which a jury could find that that delayed discovery was reasonable. Plaintiff's mental health and medical records are replete with references to alcohol abuse, outbursts of anger, depression, and other behaviors associated with PTSD. O'Donnell testified that, as a result of plaintiff's PTSD, plaintiff refused to consider the relationship with her stepuncle as abusive or as the cause of her symptoms and that such a reaction is common among adult survivors of child abuse. In this respect, this case is materially distinguishable from *Flaningam v. Flaningam*, 145 Or App 432, 929 P2d 1084 (1996), in which we held that ORS 12.117 barred the plaintiff's claims because she had not presented any evidence that she had exercised reasonable care in discovering the link between her injury and the alleged abuse. *Id.* at 435. The plaintiff had argued on appeal that her PTSD had prevented her from becoming aware of that link. The plaintiff had not, however, presented evidence either as to a diagnosis of PTSD or as to "how that condition prevented her * * * from being aware of the link between her injury and the alleged abuse." *Id.* In this case, however, the record contains the precise kind of evidence that was missing in *Flaningam.*

Because there was evidence from which a jury could find that plaintiff's claim was timely filed, we conclude the court did not err in denying defendant's motion for directed verdict.

Affirmed.