Argued and submitted June 9, 2010, vacated and remanded with instructions to enter a judgment declaring that the statute of limitations contained in the Oregon Tort Claims Act does not violate Article I, section 20, of the Oregon Constitution or the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution; otherwise affirmed May 18, petition for review denied October 20, 2011 (351 Or 254)

Jack DOE 1,
an individual
proceeding under a fictitious name;
Jack Doe 2, an individual
proceeding under a fictitious name;
Jack Doe 3, an individual
proceeding under a fictitious name;
Jack Doe 4, an individual
proceeding under a fictitious name;
Jack Doe 5, an individual
proceeding under a fictitious name;
Jack Doe 6, an individual
proceeding under a fictitious name;
and Jack Doe 7, an individual
proceeding under a fictitious name,
*Plaintiffs-Appellants,*

*v.*

LAKE OSWEGO SCHOOL DISTRICT,
an Oregon public school district,
authorized and chartered by
the laws of the State of Oregon;
and Judd Johnson,
an individual,
*Defendants-Respondents.*

Clackamas County Circuit Court
CV08020740; A140979

259 P3d 27

Kristian Roggendorf argued the cause for appellants. With him on the briefs were Kelly Clark and O'Donnell Clark & Crew LLP.

David A. Ernst argued the cause for respondent Lake Oswego School District. With him on the brief were Lisa E. Lear and Bullivant Houser Bailey PC.

No appearance for respondent Judd Johnson.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Landau, Judge pro tempore.

ORTEGA, P. J.

**ORTEGA, P. J.**

Plaintiffs brought this action based on incidents of sexual abuse by a teacher (Johnson) that they allege occurred between 1968 and 1984, while they were each students in Johnson's fifth-grade class. They sought damages from the Lake Oswego School District[1] pursuant to the Oregon Tort Claims Act (OTCA) on a theory of *respondeat superior* liability for sexual battery and intentional infliction of emotional distress (IIED). In addition, plaintiffs brought a federal civil rights claim against defendant for violating their right to be free from sexual abuse by a governmental actor; they also sought declaratory relief in the form of a "declaration [that] the OTCA statute of limitations, as applied to them, is unconstitutional." Finally, one plaintiff sought damages for negligence. Defendant filed ORCP 21 motions to dismiss all claims, contending that the claims for sexual abuse, IIED, and negligence were time barred pursuant to the "Notice and Statute of Limitation requirements of the [OTCA]." As to the civil rights claim, defendant contended that dismissal was required because the claim was time barred and plaintiffs failed "to state ultimate facts that support the proposition that [defendant] acted with 'deliberate indifference' " to their constitutional rights. Further, defendant asserted that the claim for declaratory relief should be dismissed as the courts had already rejected constitutional challenges to the notice and statute of limitations provisions of the OTCA. The trial court ultimately agreed with defendant's contentions and entered a limited judgment dismissing plaintiffs' claims against defendant. We vacate the judgment, in part, and remand with instructions but otherwise affirm.

In reviewing the trial court's disposition of the motions to dismiss under ORCP 21, "we assume the truth of the facts alleged in the complaint, drawing all inferences in plaintiffs' favor." *American Fed. Teachers v. Oregon Taxpayers United*, 208 Or App 350, 366, 135 P3d 1111, *adh'd to on recons*, 209 Or App 518, 149 P3d 159 (2006), *rev den*, 345 Or

---

[1] Although plaintiffs brought their action against both Johnson and the school district, none of the claims against Johnson individually are at issue in this appeal. Accordingly, throughout this opinion, the term "defendant" is used to refer to the school district.

95 (2008). Plaintiffs are all adult males born between 1957 and 1970. Between 1968 and 1984, each plaintiff was a fifth-grade student in Johnson's class at one of defendant's elementary schools. While a student in Johnson's class, and while on school grounds, each plaintiff was sexually abused by Johnson. Among plaintiffs, Jack Doe 6 was the last to be a student in Johnson's class. Over the course of the years, Johnson was transferred among and worked in three of defendant's elementary schools.

The summer before the school year in which Jack Doe 6 was abused, defendant learned that Johnson had been accused of molesting a young boy off school grounds. Although the police investigated the accusation, the boy refused to testify and, accordingly, Johnson was not prosecuted. Defendant took no action upon learning of the accusation.

After Jack Doe 6 was abused, he disclosed the abuse to his mother, who "contacted an administrator in the [school district] about the abuse." The administrator offered to have Johnson transferred if Jack Doe 6's mother would keep quiet about the abuse. She refused, reported the abuse to law enforcement, and Johnson was prosecuted and eventually convicted for the abuse of Jack Doe 6.

In 2008, plaintiffs brought this action. The first amended complaint included *respondeat superior* claims under the OTCA for sexual battery and IIED, a claim for violation of plaintiffs' federal civil rights, and an alternative claim seeking a declaration that, in the event that plaintiffs' claims under the OTCA were time barred, the OTCA was unconstitutional. Defendant moved to dismiss all of plaintiffs' claims, arguing that the OTCA claims were barred by "applicable notice and statute of limitations requirements," the civil rights claim failed to state a claim or was precluded by the applicable statute of limitations, and the claim for declaratory relief was meritless. After a hearing, the trial court entered an order dismissing the declaratory relief claim with prejudice and dismissing plaintiffs' remaining claims with leave to replead.

In their amended pleading, plaintiffs reasserted their claims. In addition, Jack Doe 6 added a separate negligence claim against defendant. The new pleading clarified that each plaintiff had only recently discovered the harm that arose from the sexual abuse. Plaintiffs stated that, at the time of the abuse, they were unable to recognize that they had been harmed "due to the obedience, admiration, respect, and esteem" they had for their teacher, because they were confused by the touching and were "unable to discern at the time that the touching was inappropriate or harmful[,]" and because "the operation of the child abuse" on their "psyche[s] prevented [them] from recognizing that [they] had been injured."

With respect to the civil rights claim, plaintiffs alleged that defendant had "a custom or practice of ignoring signs and reports of misconduct of a sexual nature toward boys by * * * Johnson." In addition, they specifically alleged that defendant had received reports that Johnson "touched various boys in a sexual manner" but that the school district had either failed to act "or merely transferred [Johnson] from one of [defendant's] elementary schools to another," and that plaintiffs had discovered defendant's "custom or practice of transferring pedophiles among its schools" in March 2008. As for the separate negligence claim, Jack Doe 6's allegations centered around defendant's knowledge, before Jack Doe 6 was abused, of the investigation into Johnson's sexual abuse of another child off of school grounds. Further, Jack Doe 6 alleged that he had only discovered defendant's negligent conduct in March 2008.

Defendant again moved, pursuant to ORCP 21, for dismissal of all the claims against it. At the hearing, with respect to the OTCA claims for sexual battery and IIED, the court ultimately agreed with defendant's contention that the claims were barred by the statute of limitations. According to the court,

"the last time this case was here on this issue, my concern was that plaintiff wanted an opportunity to allege facts that—as strongly as they could—to attempt to avoid this significant statute of limitations issue. I do not believe they have done so at this time, and let me just tell you why.

"First, what we know is that these children range in age from 10 to 13 years of age. We know from the pleading that the conduct that the plaintiffs complained of are physical injury, mental injury, rape, sexual abuse, sexual exploitation. They include allegations of engaging in fondling of Plaintiff, Jack Doe No. 1's, genitals inside his clothing while in the classroom in front of other students. And there are similar allegations, I believe, against—relating to the conduct of this—excuse me—this employee, of all the children.

"* * * * *

"[W]hat we're here for today is to determine whether or not the school district ought to be liable for this kind of conduct. And I find it cannot be under the allegations of this complaint. I have very carefully looked at the—the reasons used, to attempt to get around the discovery rule. And the—the words: 'Plaintiff did not comprehend the abusive nature, and therefore could not perceive the harm,' in my view, that's a conclusion, which, if justified by the factual allegations, would be sufficient to allow this case to go forward.

"However, the factual allegations are: Due to the obedience, admiration, respect and esteem which Jack Doe had for Johnson as his teacher. And it also, because the touching that forms the basis of the damages was similar enough to nontortious touching by Johnson, that occurred during and part of the grooming process. As a young boy, he was confused by it and unable to discern at the time that the touching was inappropriate or harmful.

"Now, assuming that conduct to be true and the state of mind of that young man to be true, it * * * simply does not support a claim that he did not comprehend the abusive nature and therefore could not perceive the harm. * * *

"* * * So I am allowing the motion to dismiss with prejudice and without leave to replead the first 14 claims for relief."

After being informed by counsel for plaintiffs that the analysis for the negligence claim was the same as that for the "vicarious liability tort claims," the court also dismissed the negligence claim with prejudice. Finally, as to the federal civil rights claim, the court stated that, in reaching its decision, it "disregarded what I saw as conclusions rather than

statements of ultimate fact." In the trial court's view, the facts alleged did not state a federal civil rights claim. The court concluded that the claims were time barred and the facts, as pleaded, were not sufficient to "get around" that issue. Furthermore, the court concluded that plaintiffs failed to allege facts sufficient to demonstrate that defendant had a policy of acting to deprive plaintiffs of their civil rights or that defendant acted with deliberate indifference to plaintiffs' rights. Accordingly, the court dismissed the federal civil rights claim as well.

On appeal, plaintiffs first assign error to the court's dismissal of their "*respondeat superior* claims on the basis of untimeliness under the OTCA." According to plaintiffs, they

> "were each unable to recognize the harm at the time of the abuse, and well-documented mental health dynamics prevented any subsequent realization of the elements of legal 'injury.' Thus, Plaintiffs were unaware of one or more of the elements of legal injury at all times leading up to their discovery of a connection between their abuse and its injurious consequences, and the discovery rule therefore applies."

Defendant responds that plaintiffs' claims for sexual battery and IIED "are barred by the notice and statute-of-limitation provisions of the OTCA. Both time periods commenced when the 'harmful or offensive touching' occurred, and the discovery rule does not save Plaintiffs' tort claims." (Boldface omitted.)

■ Article IV, section 24, of the Oregon Constitution protects the state, including its political subdivisions, from "suit" unless the legislature provides a cause of action. *Dowers Farms v. Lake County*, 288 Or 669, 679, 607 P2d 1361 (1980). However, the OTCA, originally passed in 1967, "abrogated, in part, the state's sovereign immunity." *Jensen v. Whitlow*, 334 Or 412, 416, 51 P3d 599 (2002). Pursuant to the OTCA, "[s]ubject to the limitations of ORS 30.260 to 30.300, every public body is subject to action or suit for its torts and those of its officers, employees and agents acting within the scope of their employment or duties * * *." ORS 30.265(1). A school district is a public body. *See* ORS 30.260(4). Therefore, as a general proposition, an action may be brought against a

school district such as defendant pursuant to the OTCA, subject to certain limitations.

Under ORS 30.275,

"(1)   No action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of ORS 30.260 to 30.300 shall be maintained unless notice of claim is given as required by this section.

"(2)   Notice of claim shall be given within the following applicable period of time, not including the period, not exceeding 90 days, during which the person injured is unable to give the notice because of the injury or because of minority, incompetency or other incapacity:

"(a)   For wrongful death, within one year after the alleged loss or injury.

"(b)   For all other claims, within 180 days after the alleged loss or injury."

Furthermore,

"[e]xcept as provided in ORS 12.120, 12.135 and 659A.875, but notwithstanding any other provision of ORS chapter 12 or other statute providing a limitation on the commencement of an action, an action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of [the OTCA] shall be commenced within two years after the alleged loss or injury."

ORS 30.275(9). Thus, a plaintiff seeking to bring an action against a public body, or an officer, employee, or agent of a public body who acted in the course and scope of employment, must give proper notice of the claim (within 270 days of the alleged loss or injury for minors) and must generally bring the action "within two years of the alleged loss or injury." ORS 30.275(2), (9).

■■     Although the times for providing notice and bringing a claim pursuant to the OTCA are short, the discovery rule applies to OTCA cases and, therefore, the 270-day notice period and two-year statute of limitations applicable here do not begin to run until a plaintiff knows or reasonably should know of the facts giving rise to his claim. *See Gaston v. Parsons*, 318 Or 247, 255-26, 864 P2d 1319 (1994) (describing

standard); *Stephens v. Bohlman*, 314 Or 344, 349-50, 838 P2d 600 (1992) (the discovery rule applies to OTCA cases); *Duyck v. Tualatin Valley Irrigation Dist.*, 304 Or 151, 161-64, 742 P2d 1176 (1987) (discussing the discovery rule in the context of the OTCA). Accordingly, the statute of limitations on a claim against a public body begins to run only when the plaintiff knows or should know of (1) the injury, *Dowers Farms*, 288 Or at 680-81; (2) the identity of the tortfeasor, *Adams v. Oregon State Police*, 289 Or 233, 239, 611 P2d 1153 (1980); and (3) the cause of the injury, *see Edwards v. State of Oregon*, 217 Or App 188, 197, 175 P3d 490 (2007) ("The notice and commencement periods set forth in the OTCA begin to run when the plaintiff knows or, in the exercise of reasonable care should know, facts that would make an objectively reasonable person aware of a substantial possibility that all three of the following elements exist: an injury occurred, the injury harmed one or more of the plaintiff's legally protected interests, and the defendant is the responsible party." (Internal quotation marks omitted.)).

Here, as to their claims for sexual battery and IIED, plaintiffs contend that they did not become aware that they had been injured until shortly before they filed their claims and that, accordingly, their claims against defendant are timely once the discovery rule is applied. The problem with that argument is that "injury," in this context, has a particular meaning. And given that particular meaning of "injury," the facts alleged in plaintiffs' operative pleading do not save their sexual battery and IIED claims.

■  In *Cooksey v. Portland Public School Dist. No. 1*, 143 Or App 527, 923 P2d 1328, *rev den*, 324 Or 394 (1996), this court considered, in the context of a student's claims arising out of inappropriate sexual conduct by a teacher, the question of when a person suffers "injury" for purposes of the OTCA's statute of limitations. The court observed in that case that the term "injury" has a "well-defined meaning in the context of tort actions[.]" *Id.* at 533. That recognized meaning in this context is "legally cognizable harm." *Id.* at 534 (internal quotation marks omitted). The court in *Cooksey* explained that, because inappropriate sexual touching "is an invasion of a legally protected interest[,]" a tort claim based on such touching arises when that inappropriate touching

occurs. *Id.* (citing *Bakker v. Baza'r, Inc.*, 275 Or 245, 249, 551 P2d 1269 (1976) (a touching need not do "actual physical harm" to support liability for battery)). Furthermore, the fact that a plaintiff may later experience "physical and emotional symptoms resulting from the same incidents does not mean that the claims arising out of those incidents accrued later." *Id.* Given that the term injury, for purposes of the OTCA, means "legally cognizable harm," the "injury" that plaintiffs in this case suffered, like the plaintiff in *Cooksey*, was the sexual touching by their teacher. Thus, once plaintiffs knew that the sexual touching had occurred, they knew of the injury.

Plaintiffs nevertheless contend that their allegations, taken as true, state a claim because they did not perceive harm from the touching at the time and, therefore, did not know that they were injured—that is, according to plaintiffs, "the abuse caused such psychological confusion that they could not consciously process that they had been hurt by it in the moment." As noted, as to each plaintiff, the complaint alleges that the harm "from Johnson's molestation" was not discovered until between 2006 and 2008:

> "At the time of the abuse, [p]laintiff did not comprehend the abusive nature—and therefore could not perceive the harm—of Johnson's touching due to the obedience, admiration, respect, and esteem which [plaintiff] * * * had for Johnson as his teacher. [Plaintiff] * * * was further unable to recognize that he had been harmed at the time of the abuse, because the touching that forms the basis for [p]laintiff's] damages was similar enough to the non-tortious touching by Johnson that occurred during and was part of the grooming process that, as a young boy, he was confused by it and unable to discern at the time that the touching was inappropriate or harmful. After * * * the abuse and until [between 2006 and 2008], the operation of child abuse on [p]laintiff's] psyche prevented him from recognizing that he had been injured."

However, those allegations fail to avoid the rule from *Cooksey* that, for claims under the OTCA based on sexual battery, the "injury" is the inappropriate touching itself. *See* 143 Or App at 534. Plaintiffs did not allege that they were unaware of the fact that Johnson had touched them sexually

but, rather, that they were confused and unable to see that the sexual touching was harmful. Where, as here, a plaintiff seeking damages for sexual abuse under the OTCA knew that the sexual touching occurred as well as who did the touching, there is no basis to say that the plaintiff did not know of or could not reasonably have discovered the injury— that is, the legally cognizable harm.[2] Accordingly, we conclude that the trial court correctly determined that the allegations in plaintiffs' complaint are insufficient to prevent the application of the OTCA's time limitations with respect to the sexual battery and IIED[3] claims and those claims were properly dismissed.

■    We next turn to plaintiffs' assignment of error relating to Jack Doe 6's claim against the school district under the OTCA for negligence, in which plaintiffs raise additional issues distinct from those discussed in relation to the sexual battery and IIED claims. Specifically, plaintiffs contend that the court erred in dismissing Jack Doe 6's negligence claim as untimely "based on the mere fact that he knew he was abused by a teacher and *his mother* knew that [defendant] was aware of Johnson's danger." (Boldface omitted; emphasis in original.) According to plaintiffs, the claim was timely because Jack Doe 6 alleged that he was unaware of defendant's "prior knowledge until shortly before joining [the] lawsuit, he could not have discovered [defendant's] negligent

---

[2] *Jasmin v. Ross*, 177 Or App 210, 33 P3d 725 (2001), which is discussed by the parties in their briefs, examined what constitutes an injury pursuant to ORS 12.117 and is not applicable here. That statute sets forth a special statute of limitations generally applicable to civil claims based on child sex abuse, but that special statute of limitations does not generally apply to cases brought pursuant to the OTCA. *See* ORS 30.275(9) (providing its limitation on claims "notwithstanding any other provision of ORS chapter 12"); *see also Cooksey*, 143 Or App at 535-36 (Leeson, J., concurring) (contrasting the OTCA limitation on claims with that provided for in ORS 12.117).

*Jasmin* construed the term "injury" for purposes of ORS 12.117 to mean something different than it means for purposes of the OTCA. However, our analysis in that case was based on the particular wording of ORS 12.117 and is not applicable in this case. *See Jasmin*, 177 Or App at 215 n 3 (observing that, in light of the text of ORS 12.117, "[a] definition equating the 'injury' with the abusive conduct itself makes the statute unintelligible: the statute treats the abuse and the injury as logically and temporally distinct concepts, in that the 'abuse' is said to *cause* the 'injury,' and a thing cannot cause itself" (Emphasis in original.)).

[3] As noted in *Cooksey*, claims for emotional injury based on battery accrue at the same time as did the claim for the battery itself. 143 Or App at 534.

conduct on his own as a fifth grade boy, and *his mother's knowledge cannot be imputed to him.*" (Emphasis added.) However, before the trial court, plaintiffs did not contend that any of the issues with respect to the timeliness of Jack Doe 6's negligence claim should be considered separately from the other claims pursuant to the OTCA. In its motion to dismiss, defendant asserted that the negligence claim "should not be treated any differently than plaintiffs' First through Fourteenth Claims for Relief [the sexual battery and IIED claims]." (Boldface omitted.) And at the hearing on the motions, rather than articulating any argument against dismissal of the negligence claim that was different than the arguments with regard to the other OTCA claims, plaintiffs affirmatively represented to the court that the analysis was the same. Specifically, after the court had considered the parties' arguments on and had dismissed plaintiffs' sexual battery, IIED, and civil rights claims, counsel for plaintiffs engaged in the following exchange with the court:

"[PLAINTIFF'S COUNSEL]: Your Honor, if I may interject something here?

"THE COURT: You may.

"[PLAINTIFF'S COUNSEL]: As to the final remaining motion, and partly in the interest of time, there's one remaining motion as to the negligence claim, and I'll just make this easy. I—I think, given the Court's ruling on the vicarious liability tort claims [for sexual battery and IIED], the analysis is the same, and I expect the Court's ruling would be the same. And I—I for one don't have a need to go through that—that process, unless either [counsel for defendant] or you, Your Honor, feel like the analysis is—is different in any particular way or if you have any particular questions.

"THE COURT: Thank you. I—I appreciate your candor. The motion to dismiss with prejudice and without leave to replead as to the 16th claim for relief [the negligence claim] is also allowed."

Whether plaintiffs' representation to the trial court is viewed in terms of preservation or invited error, the result is that they failed to alert the trial court to the substance of the argument they seek to raise on appeal and, therefore, we will not address their distinct contentions regarding the trial

court's dismissal of the negligence claim. *See* ORAP 5.45 (requiring preservation); *State v. Kammeyer*, 226 Or App 210, 214, 203 P3d 274, *rev den*, 346 Or 590 (2009) ("Under the invited error doctrine, a party who was actively instrumental in bringing about an alleged error cannot be heard to complain, and the case ought not to be reversed because of it." (Internal quotation marks omitted.)); *State v. Taylor*, 198 Or App 460, 469, 108 P3d 682, *rev den*, 339 Or 66 (2005) (to preserve an issue for appeal, "the appealing party's statements before the trial court must have alerted the trial judge and opposing counsel to the substance of the position that is advanced on appeal").

■ Plaintiffs also contend that the trial court erred in rejecting their claim for declaratory judgment, contending that, if their "state law claims are time barred under the OTCA, then the OTCA's notice and statute of limitations provisions effectively require these child abuse victims to bring suit before they are consciously able to comprehend that they have been injured" and violate Article I, section 20, of the Oregon Constitution and the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. We reject that assignment of error without discussion,[4] except to note that this court and the Oregon Supreme Court have also previously addressed and rejected other constitutional challenges to the OTCA's notice and statute of limitations provisions. *See, e.g., Van Wormer v. City of Salem*, 309 Or 404, 788 P2d 443 (1990) (rejecting an Article I, section 20, challenge to the OTCA statute of limitations); *Webb v. Highway Division*, 56 Or App 323, 328, 641 P2d 1158, *rev'd on other grounds*, 293 Or 645, 652 P2d 783 (1982) (rejecting an equal protection and due process challenges to the OTCA notice requirement); *Riddle v. Cain*, 54 Or App

---

[4] Although the trial court properly rejected plaintiffs' constitutional challenges to the OTCA's notice and statute of limitations provisions, plaintiffs' claim on this issue was for declaratory relief. Because plaintiffs sought declaratory relief, the trial court should have entered a judgment declaring their rights rather than simply dismissing the claim. *See Advance Resorts of America, Inc. v. City of Wheeler*, 141 Or App 166, 180, 917 P2d 61, *rev den*, 324 Or 222 (1996). Accordingly, we vacate the judgment concerning the claim for declaratory relief and remand the judgment with instructions that the court enter a judgment that the OTCA's statute of limitations provisions do not violate the state or federal constitution. *See Doe v. Medford School Dist. 549C*, 232 Or App 38, 46, 221 P3d 787 (2009).

474, 478-79, 635 P2d 394, *rev den*, 292 Or 334 (1981) (rejecting a due process challenge to the OTCA notice requirement); *Brown v. Portland School Dist. #1*, 48 Or App 571, 576, 617 P2d 665 (1980), *rev'd on other grounds*, 291 Or 77, 628 P2d 1183 (1981) (rejecting an equal protection challenge to the OTCA notice requirement); *see also Nored v. Blehm*, 743 F2d 1386 (9th Cir 1984) (rejecting an equal protection challenge to the OTCA statute of limitations).

■　　Finally, we turn to the trial court's dismissal of plaintiffs' federal civil rights claim. On appeal, plaintiffs contend that the trial court erred in ruling that they had failed to "state a claim for 'deliberate indifference' under [42 USC] Section 1983." It is plaintiffs' position that their complaint alleges facts sufficient to establish "a *prima facie* case of deliberate indifference on the part of [d]efendant[.]" Defendant, on the other hand, asserts that plaintiffs' complaint "failed to allege facts, rather than mere conclusions, showing that a person with policy-making authority took actions that deprived [p]laintiffs of their federal [c]onstitutional rights or that any such action was taken with 'deliberate indifference' to those rights." (Boldface omitted.) In addition, defendant contends that, even if the complaint otherwise states a claim for relief pursuant to section 1983, the claim is time barred. We conclude that the complaint does not allege facts sufficient to state a claim under section 1983, and, accordingly, do not reach the statute of limitations issue.

■　Pursuant to 42 USC section 1983, a

"person who, under color of any statute, ordinance, regulation, custom, or usage, of any State * * * subjects, or causes to be subjected, any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]"[5]

Although public bodies are "persons" within the meaning of the statute, such a body "may not be held liable under

---

[5] A student in a public school has a liberty interest that includes the right to be free from sexual abuse and, therefore, such abuse may be the subject of an action pursuant to section 1983. *Plumeau v. School Dist. #40 County of Yamhill*, 130 F3d 432, 438 (9th Cir 1997).

[section] 1983 merely because it employs a tortfeasor." *Board of Comm'rs v. Brown*, 520 US 397, 403, 117 S Ct 1382, 137 L Ed 2d 626 (1997). "In other words, *respondeat superior* liability does not apply in section 1983 actions." *T. R. v. Boy Scouts of America*, 344 Or 282, 290, 181 P3d 758, *cert den*, 129 S Ct 146 (2008). Instead, the public body must, itself, "be the actor, and its own actions must violate the citizen's constitutional rights." *Id*. Thus, a plaintiff seeking recovery from a government body must identify a " 'policy' or 'custom' that caused the plaintiff's injury." *Brown*, 520 US at 403. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [section] 1983." *Monell v. New York City Dept. of Social Services*, 436 US 658, 694, 98 S Ct 2018, 56 L Ed 2d 611 (1978). Official policy "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. These are actions for which the [government actor] is actually responsible." *Connick v. Thompson*, 563 US \_\_\_\_ , 131 S Ct 1350, 1359, 179 L Ed 2d 417 (2011) (internal citation, brackets, and quotation marks omitted); *see St. Louis v. Praprotnik*, 485 US 112, 126-27, 108 S Ct 915, 99 L Ed 2d 107 (1988) (government policy or custom is one that is authorized by official with final policy-making authority); *Pembaur v. Cincinnati*, 475 US 469, 483, 106 S Ct 1292, 89 L Ed 2d 452 (1986) ("[M]unicipal liability under [section] 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."). "Furthermore, a municipality's failure to act can constitute an official policy that gives rise to liability if that failure evidences a ' "deliberate indifference" to the rights of its inhabitants.' " *T. R.*, 344 Or at 291 (quoting *Canton v. Harris*, 489 US 378, 388-89, 109 S Ct 1197, 103 L Ed 2d 412 (1989)). Thus, a government entity's policy of inaction in the face of notice that such inaction will cause constitutional violations on the part of its employees is the "functional equivalent of a decision by the [government] by itself to violate the Constitution."

*Connick*, 563 US at \_\_\_\_ , 131 S Ct at 1360 (internal quotation marks omitted). However, deliberate indifference " 'is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.' " *Id.* (quoting *Brown*, 520 US at 410).

■      Given those standards, to state a claim for relief pursuant to section 1983, plaintiffs were required to sufficiently allege that they were deprived of a constitutional right pursuant to a custom or policy of defendant that amounts to deliberate indifference and that the custom or policy was "the moving force behind the constitutional violation." *Plumeau*, 130 F3d at 438 (internal quotation marks omitted); *see T. R.*, 344 Or at 291 (describing what the plaintiff was required to prove to prevail on a section 1983 claim). With respect to the substance of plaintiffs' section 1983 claim, the parties focus on (1) whether plaintiffs' complaint sufficiently alleged that defendant had a "policy or custom" of transferring sexual abusers (and specifically Johnson) which led to their abuse; and (2) whether plaintiffs sufficiently alleged action by a policy-making official.

■      As noted, in evaluating whether a complaint states a claim for relief, we look at the facts pleaded, but "disregard any allegations that state conclusions of law." *Gafur v. Legacy Good Samaritan Hospital*, 344 Or 525, 529, 185 P3d 446 (2008). "An ultimate fact is a fact from which legal conclusions are drawn. A conclusion of law, by contrast, is merely a judgment about a particular set of circumstances and assumes facts that may or may not have been pleaded." *Fearing v. Bucher*, 328 Or 367, 375 n 5, 977 P2d 1163 (1999). Bald legal conclusions are not sufficient to support a claim. *Walthers v. Gossett*, 148 Or App 548, 558, 941 P2d 575 (1997). Rather, a complaint must allege ultimate facts from which the required conclusions are

> "*inferable*, not a mere possibility. An inferable conclusion is more than a suspicion, a suggestion, a speculation, or a conjecture; a conclusion is inferable from facts if the conclusion can be logically deduced from the facts. * * * Alternatively, a complaint can allege so many facts suggesting a particular conclusion that the conclusion is inferable by induction."

*Bernards v. Summit Real Estate Management, Inc.*, 229 Or App 357, 368, 213 P3d 1 (2009) (emphasis in original).

Here, with respect to their section 1983 claim, plaintiffs allege that defendant "had a custom or practice of ignoring signs and reports of misconduct of a sexual nature toward boys by Defendant Johnson." Their factual allegations in that respect are as follows:

"Specifically, one year prior to the abuse of Jack Doe 6, Johnson had been discovered abusing a young boy in a boat on Lake Oswego. Defendant * * * was informed of the incident, but took no action. Johnson was not prosecuted because the boy did not want to testify. Furthermore, at some point during or after the abuse of Jack Doe 6, he disclosed the fact of the abuse to his mother, and she contacted an administrator * * * about the abuse. The administrator, a final policy-making official, immediately instructed [p]laintiff's mother to remain quiet about the abuse, and offered that if she did remain quiet then Johnson would be transferred. The speed and sureness with which this transfer was offered, along with the numerous postings which Johnson had held in the [d]istrict over the years [teaching in three elementary schools], leads to the reasonable inference that [d]efendant * * * had confronted this problem in the past with Johnson or other teachers that had abused children, and engaged in the practice of transferring Johnson or other teachers upon a report of abuse."

It is plaintiffs' position that those facts are sufficient to raise the inference that defendant had "[a] practice or custom of deliberate indifference[.]" We disagree.

To begin with, we are not persuaded that the facts set forth in the complaint sufficiently allege a policy or custom that resulted in plaintiffs' abuse. Those facts are (1) that Johnson had worked in the three Lake Oswego elementary schools over the course of the years; (2) that before Johnson abused Jack Doe 6, the school district learned of the uncharged abuse of a child outside of the school, but did nothing; and (3) after Jack Doe 6's mother informed an administrator who worked for defendant of Johnson's abuse of Jack Doe 6, the administrator offered to transfer Johnson in exchange for the mother not disclosing the abuse to others.

Assuming those allegations to be true, they do not allow the inference that over the years in which the alleged abuse occurred (approximately 15 years), the district had a persistent and widespread practice of transferring sexual abusers to various schools in response to complaints. Nor do they permit us to infer that the official policy was to transfer abusers when complaints were made. Furthermore, contrary to the position taken by plaintiffs, those facts are simply not sufficient to allow a factfinder to "inductively infer" the necessary facts. According to plaintiffs, the "speed and sureness" with which the transfer offer was made leads to the inference that defendant had a policy of transferring sex abusers. However, the inference that plaintiffs wish to draw does not logically follow from the sparse facts they have alleged. The facts that Johnson continued teaching after he was accused of abusing another child outside of school and that a quick offer of transfer was made following an allegation of abuse of a student does not logically lead to the conclusion that the district had an existing policy or widespread practice as plaintiffs allege. While they may give rise to a suspicion that the school district was transferring abusers or allow for speculation that defendant may have been engaging in such a practice, that is not sufficient to support the conclusions plaintiffs contend a factfinder could draw. *See State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004) (the line between inference and speculation is drawn by the laws of logic).

■■ In addition, plaintiffs did not sufficiently allege any action by an official policy-maker. Whether a particular official is a final policy-making official for purposes of section 1983 liability is purely a legal question and not one of fact. *Los Angeles Police Protective League v. Gates*, 907 F2d 879, 889 (9th Cir 1990); *see Jett v. Dallas Independent School Dist.*, 491 US 701, 737, 109 S Ct 2702, 105 L Ed 2d 598 (1989) (identification of officials whose decisions represent official policy is a legal question to be resolved by the court); *Praprotnik*, 485 US at 124 (identification of policy-making officials is not a question of fact in the usual sense). Plaintiffs' allegation in that respect—that the offer of transfer was made by an administrator with final policy-making authority— is a mere legal conclusion and is unaccompanied by facts,

such as the identity of the administrator, to support it. A bare allegation that an unnamed person was "a final policy-making official" is insufficient to support a claim for relief pursuant to section 1983. *See Davenport v. City of Garland*, No 3:09-CV-798-B ECF, 2010 WL 1779620, at *3 (ND Tex, Apr 9, 2010) (so concluding pursuant to FRCP 12).

In light of the foregoing, the trial court did not err in dismissing plaintiffs' claims against defendant.

Vacated and remanded with instructions to enter a judgment declaring that the statute of limitations contained in the Oregon Tort Claims Act does not violate Article I, section 20, of the Oregon Constitution or the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution; otherwise affirmed.